In re the Marriage of: Garrie D. Trattles, Jr.,
Petitioner-Respondent,

v.

Doris Trattles, Respondent-Appellant.

Court of Appeals

*No. 84–2184. Submitted on briefs August 16, 1985.—
Decided September 18, 1985.*
(Also reported in 376 N.W.2d 379.)

For the respondent-appellant, the cause was submitted on the briefs of *James Grant*, of *Grant, Buchholz, Sias & Hoeper*, of Waupun.

For the petitioner-respondent, the cause was submitted on the brief of *Richard H. Wehner*, of *Zacherl & Wehner, S.C.* of Fond du Lac.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Doris Trattles appeals from the property division and maintenance provisions of a divorce judgment.

As to the property division, Doris claims the trial court erred by failing to exclude from the marital estate the value of property gifted to her during the marriage. We conclude that all of the gifts were so altered in character evincing Doris' donative intent such that they became part of the marital estate. As to maintenance, Doris claims the trial court abused its discretion in awarding $500 per month maintenance for a period of one year. We find no abuse of discretion. Therefore, we affirm the trial court as to both issues.

## PROPERTY DIVISION

At various times during the marriage, Doris received gifts from her father in the form of cash and gold in the approximate amount of $32,750.[1] The gifts of gold were converted to cash and, as with the cash gifts, were then deposited into either a separate bank account in Doris's name or a joint bank account in the name of Doris and Garrie. It is undisputed that all of the gift proceeds were used to purchase household furnishings and effects, to pay for normal and usual household expenditures, to pay for repairs, maintenance and improvement to the home the parties owned in joint tenancy, and to make various mortgage payments on the home.

The issue is one of statutory construction of the property division statute, sec. 767.255, Stats., and its application to the controlling facts of this case which are essentially uncontested.[2] Generally, a property division upon divorce is within the sound discretion of the trial court. *Weiss v. Weiss*, 122 Wis. 2d 688, 692, 365 N.W.2d

---

[1] Garrie takes issue upon appeal with the trial court's alternate findings as to the amount of the gifts. Because we conclude that the character of the gifted property has not been preserved, we are not required to address this claim.

[2] See footnote one.

608, 610 (Ct. App. 1985). However, statutory construction is a question of law and we need not defer to a trial court's conclusion. *Arneson v. Arneson,* 120 Wis. 2d 236, 243, 355 N.W.2d 16, 19 (Ct. App. 1984). The application of a statute to a particular set of facts presents a question of law. *Weiss* at 692, 365 N.W.2d at 610. Thus, the question before us is one of law which we will review *de novo.*

### Intent

Doris claims that the trial court's conclusions are erroneous because it made no finding of her specific intent to further gift her gifted property to Garrie. Doris contends that *Bonnell v. Bonnell,* 117 Wis. 2d 241, 344 N.W. 2d 123 (1984), requires such a finding. We, however, construed *Bonnell* differently in *Weiss.* We acknowledged in *Weiss* that *Bonnell* did speak to the wife's intention to make a gift of inherited property to her husband. *See Weiss* at 693, 365 N.W.2d at 611. However, we concluded that the teaching of *Bonnell* is that "the gift resulted from the conversion of her separate property to joint tenancy." *Id.* In the face of the husband's claim in *Weiss* that no evidence supported a claim that he intended to make a gift of his separate property to his wife, we held that the merger of his gifted personal property into a real estate joint tenancy with his wife constituted evidence of intent to make a gift. *Id.*

Doris claims that the record does not support any finding that she evinced an intent to make a gift. In *Bonnell,* the conversion of separate exempt real property into a joint tenancy was held to evince donative intent. In *Weiss,* the merger of separate exempt personal property with other funds which were then used to purchase real estate in joint tenancy was also held to evince donative intent. The factual variations between *Bonnell* and

*Weiss* represented distinctions without a difference. We conclude the same here. The actions of Doris in using her gift proceeds to purchase household furnishings and effects for the use, benefit and enjoyment of the family unit, to pay for normal and usual household expenditures, to pay for repairs, maintenance and improvement of the jointly owned home, and to assist in the retirement of the mortgage indebtedness on the home all serve to establish evidence of her donative intent. Therefore, the absence of a specific finding of her intent to make a gift is not fatal to the trial court's conclusions.

The case law thus far has not addressed the effect of such evidence establishing donative intent. Neither *Bonnell* nor *Weiss* instructed whether such acts constitute a gift as a matter of law or are merely presumptive evidence of donative intent. We deem it appropriate to decide this question here.

An examination of the authorities from other jurisdictions, cited with approval by our supreme court in *Bonnell*, satisfies us that such acts create a presumption of donative intent, subject to rebuttal by sufficient countervailing evidence. *See Atkinson v. Atkinson*, 429 N.E.2d 465, 467 (Ill. 1981), *cert. denied*, 456 U.S. 905 (1982) ; *Carter v. Carter*, 419 A.2d 1018, 1020–22 (Me. 1980) ; *Conrad v. Bowers*, 533 S.W.2d 614, 622 (Mo. Ct. App. 1975). These authorities hold that a change in the character of the property from separate to marital creates a presumption of an intention to make a gift to the other spouse. Such a presumption is, of course, rebuttable by sufficient competent evidence.

A close reading of the trial record in this case reveals that Doris presented no such countervailing evidence.[3]

---

[3] Surprisingly, Doris nowhere in her testimony expressly states that she did not intend to make a gift. Doris's argument, rather, appears to be that because the gifts are traceable, their value is exempt. Because we decide this case on the basis of the alteration

Rather, the issue here is couched in terms of whether evidence of an intent to make a gift existed. This was the same issue presented in *Weiss* where we held that the conversion or merger of an exempt asset into a joint asset suffices as evidence of intent to make a gift. Here, Doris's own actions present the evidentiary basis for a presumption of donative intent. No evidence rebuts this presumption.

### Character

The trial court determined that certain of the gifted property had been commingled such that its identity had not been preserved. As to the remaining gifted property, the trial court concluded that its character had been altered under *Bonnell*. We conclude that the character of all the gifted property was altered so as to sufficiently indicate donative intent and thus render its present form marital property and subject to division.

Nonmarital property is exempt from property division if it retains its identity *and* character. *Plachta v. Plachta*, 118 Wis. 2d 329, 334, 348 N.W.2d 193, 196 (Ct. App. 1984); *Weiss* at 694, 365 N.W.2d at 611. The transfer of separately owned property into joint tenancy changes the character of the ownership interest in the entire property into marital property which is subject to division. *Bonnell* at 248, 344 N.W.2d at 127; *Weiss* at 692, 365 N.W.2d at 611. Other jurisdictions have alluded to this concept as the doctrine of transmutation. *See Carter*, 419 A.2d at 1022.

As noted earlier, *Bonnell* involved the conversion of separately owned real property into jointly owned real property while *Weiss* involved the purchase of jointly

of the character of the gifted property, we are not required to address the identity/tracing issue.

owned real estate with separately owned personalty. This case, in part, involves the purchase of items of household furnishings and effects with separate exempt funds. Usually, such items are not formally titled in a spouse's name. Therefore, we must look to the manner in which the parties treated the property in question in order to decide if its character has been altered (*i.e.,* transmuted).

Such items are usually purchased for the mutual enjoyment and use of both parties to a marriage. The undisputed evidence in this case supports this inference, and no claim to the contrary is made by either party. We see this as no different from a situation in which the exempt property is used to purchase a jointly owned asset such as in *Weiss*. Since there was no countervailing evidence presented to rebut the presumption of donative intent, we conclude that the items of household furnishings and effects purchased with the gift proceeds were properly included in a marital estate under the rationale of *Bonnell* and *Weiss*. The same rationale applies to the gift proceeds used to pay for normal and usual household expenditures.

The trial court found that certain of Doris's gift proceeds were deposited into a joint bank account maintained by both parties. Although the trial court did not utilize this finding as a basis for its conclusion that this portion of the gifts became marital property, we do. The transfer of separately owned property into joint tenancy changes the character of the ownership interest in the entire property into marital property which is subject to division. *Bonnell* at 248, 344 N.W.2d at 127; *Weiss* at 692, 365 N.W.2d at 611.

As to the gift proceeds invested directly into the parties' jointly owned real estate by way of payment for

repairs, maintenance and improvement, and payment of the mortgage indebtedness, we also conclude that *Bonnell* and *Weiss* govern. The mere fact that the exempt funds were merged with (as opposed to converted to) an existing joint asset again states a distinction from *Bonnell* and *Weiss* without a difference. The logic and rationale for the application of the rule of *Bonnell* and *Weiss* still pertain. The inheriting or donee spouse has made a conscious and presumably informed decision to alter the existing manner in which his or her solely owned exempt property is held. As a result of this decision, such property no longer retains its character as separate property but rather becomes part of the marital estate subject to division under sec. 767.255, Stats.

### *Identity*

Doris argues that the trial court erred in its finding that her gifted property was not traceable, but rather had been commingled. She contends that the gift proceeds were traceable and preserved such that it was possible to determine their present value. *See Anstutz v. Anstutz*, 112 Wis. 2d 10, 11–12, 331 N.W.2d 844, 845 (Ct. App. 1983).[4]

Tracing pertains to the identity of the property—not its character. *Plachta* holds that gifted property is exempt from division if it retains its identity *and* character. Since we have already concluded that all of Doris's gifted property has lost its exempt status because of the

---

[4] We point out however, as we did in *Weiss*, that *Anstutz* is pre-*Bonnell* and unfortunately does not state how the residence, which was purchased in part with the exempt property, was titled. *Weiss v. Weiss*, 122 Wis. 2d 688, 694, 365 N.W.2d 608, 611 (Ct. App. 1985). Furthermore, *Bonnell* does not discuss *Anstutz*. *Id.*

change in its character, inquiry into the identity issue is unnecessary here.

We do observe, however, that the broadening of the rule of *Bonnell* to situations such as those in *Weiss* and in this case will tend to make character or transmutation, rather than identity, the controlling issue in most cases. We see this as a welcome and desirable trend. Tracing is a complicated exercise capable of producing illogical and inequitable results. *See Carter*, 419 A.2d at 1022. If the law of character continues to expand to include other forms of "transmuted" property, tracing may suffer a quiet death.

## MAINTENANCE

Doris contends that the trial court's maintenance determination is an abuse of discretion because it did not address all of the statutory factors recited in sec. 767.26, Stats. Doris cites *Vander Perren v. Vander Perren*, 105 Wis. 2d 219, 313 N.W.2d 813 (1982), in support of her position.

Our review of the record in this case leaves us with the conclusion that an abuse of discretion occurred when Judge Jaekels limited the period of maintenance without adequate findings of fact. [Citation omitted.] Judge Jaekels failed to articulate and use all of the *appropriate* legislative standards or guidelines established in sec. 767.26, Stats., *applicable* to this case. [Emphasis added.]

*Id.* at 228, 313 N.W.2d at 817–18. We, however, do not read *Vander Perren* as requiring a consideration of all the sec. 767.26 factors—rather only those applicable and appropriate to the case. Stated otherwise, the obligation is to consider those factors that are relevant. *See Lewis v. Lewis*, 113 Wis. 2d 172, 181, 336 N.W.2d 171, 175–76 (Ct. App. 1983).

In property division cases, we have held that a trial court need not consider all of the twelve factors recited in the property division statute. *Herlitzke v. Herlitzke,* 102 Wis. 2d 490, 495, 307 N.W.2d 307, 310 (Ct. App. 1981); *Arneson,* 120 Wis. 2d at 254, 355 N.W.2d at 24. Rather, the trial court is obligated to consider those which are relevant. *Arneson* at 254, 355 N.W.2d at 24. If *Vander Perren* and *Lewis* are unclear on this question, we now extend the rule in property division cases to a trial court's consideration of the statutory factors recited in sec. 767.26, Stats., for purposes of a maintenance determination.

An examination of the trial court's decision in this case reveals consideration of the length of the marriage, property brought to the marriage by each party, Doris's employment and earning ability, possible future employment pursuits, educational background, Garrie's income, Doris's expenses, and income tax ramifications.

Upon appeal, Doris claims that the trial court failed to consider subsec. (6) of the maintenance statute which provides:

The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

Specifically, Doris contends that she should have been given at least four years' maintenance in order to secure a parttime associate degree or certification so as to maintain herself properly and provide for her retirement. However, nothing in the trial record reveals any claim by Doris that she was seeking such degree or certification which would take four years to achieve. In fact, her testimony under questioning by the court

itself was that she wanted to maintain her existing employment in the food processing field. The limited testimony by Doris as to possible plans for future schooling was speculative at best and was not linked to any showing or claim that these possible future educational endeavors were necessary to maintain or attain a standard of living reasonably commensurate with that prevailing during the marriage of the parties. Therefore, we conclude that Doris has failed to demonstrate that a consideration of subsec. (6) of the maintenance statute was relevant or applicable to the facts of this case.

The same reasoning controls with respect to Doris's complaint that the trial court failed to consider her health problems. While she testified to certain physical ailments, she nowhere linked these to a limitation on her ability to work. In fact, the record is devoid of evidence as to any debilitating nature of the condition or illness. We therefore conclude that Doris has failed to demonstrate that these health factors were relevant or applicable to the maintenance considerations in this case.[5]

*By the Court.*—Judgment affirmed.

[5] We also observe that under the recent case of *Fobes v. Fobes,* 124 Wis. 2d 72, 368 N.W.2d 643 (1985), Doris has the right to have the matter of limited maintenance reviewed by the trial court.