IN RE the MARRIAGE of Melitta J. BRANDT, Petitioner-Appellant Cross-Respondent,

v.

Werner W. BRANDT, Respondent, Cross Appellant.

Court of Appeals

*No. 87–1514. Submitted on briefs March 28, 1988.—Decided June. 1, 1988.*

(Also reported in 427 N.W.2d 126.)

On behalf of the petitioner-appellant-cross-respondent the cause was submitted on the briefs of *Magdalena Z. Wegner* of *Joseph F. Schmitt Associates, S.C.* of Cedarburg.

On behalf of the respondent-cross-appellant, the cause was submitted on the briefs of *Michael S. Heffernan* of *Stolper, Koritzinsky, Brewster & Neider, S.C.* of Madison.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Melitta Brandt appeals and Werner Brandt cross-appeals the property division provisions of a divorce judgment. Melitta contends that the trial court abused its discretion by: (1) concluding that certain of Melitta's inherited property had been commingled with other assets, thereby rendering it marital property; (2) including this inherited property in the marital estate without a finding of hardship; (3) declining to consider the tax consequences of the property division. Werner argues that the trial court abused its discretion by: (1) failing to award interest on the property division from the date of the divorce to the date of distribution; (2) valuing the property as of the date of the divorce; and (3) concluding that certain other of Melitta's inherited property did not lose its "exempt" status because of sale.

Except for a distribution from a "Clifford trust," we conclude that the identity of Melitta's inherited property was not properly preserved and was therefore properly included in the marital estate. We reject

all other arguments of both parties. Consequently, the judgment is affirmed in part and reversed in part and the cause is remanded to the trial court for modification of the property division.

## FACTS

Melitta and Werner were married in Munich, West Germany on September 6, 1952. Both were German citizens. Werner had immigrated to the United States but at the time of the marriage was stationed in Germany with the United States Army. Prior to the marriage, Melitta had inherited a small estate upon the death of her father. Melitta was the great-granddaughter of the founder of the Opel Motor Car Company. As a result, Melitta stood to inherit a substantial estate upon her mother's death. Melitta's family was initially opposed to her marriage to Werner. Within a few days following their marriage, Melitta and Werner entered into a post-nuptial agreement whereby they agreed to maintain their separate estates. Thereafter, opposition to the marriage evaporated. Four children were born to the marriage. All are now adults.

In 1963, Melitta's mother died, leaving a will which provided that the inheritances should forever remain the separate property of the beneficiary. The will also provided that the inheritances were never to become marital property or be subject to the management or control of a non-beneficiary. Melitta inherited an estate of nearly five million Deutschemarks.

Melitta's inheritance remained in Germany under the administration of a German executor. Melitta would, from time to time, ask the executor to provide her money from the inheritance. Melitta used this

money to supplement the family's income. In 1966, Melitta and Werner moved to Wisconsin when Werner became an associate professor at the University of Wisconsin—Milwaukee. His starting salary was $13,000 for the academic year.

Nearly all of Melitta's assets from her inheritance were invested in Continental Gummiwerke stock in Germany. In 1969, a block of this stock was used to fund a "Clifford trust" created for the benefit of the parties' children. The trust was established with the Northern Trust Company of Illinois and remained inactive except for two corpus distributions to Melitta.

Beginning in 1969, the value of the Continental stock began to steadily decline. Because of this, Melitta and Werner decided to transfer the bulk of Melitta's inheritance to the United States. They consulted an Attorney Callahan in Chicago for estate planning advice. During these discussions, no mention was made of the post-nuptial agreement. Attorney Callahan advised Melitta and Werner to pay off debts against Melitta's inherited assets[1] and suggested that the parties begin a gift program to their children to minimize inheritance taxes.

Attorney Callahan also recommended that the parties "separate things out" as a prelude to equalizing the estates, thereby minimizing taxes for estate planning purposes. He advised the parties to create and maintain separate accounts and terminate a joint investment account that was created with Werner's gifts and inheritance.

The parties took some steps to implement Attorney Callahan's advice. The gift program commenced.

---

[1]Under German law, the assets that comprised Melitta's inheritance were frozen in Germany until the debts were paid.

However, the joint investment account was not terminated.

When the Continental stocks arrived from Germany, an investment account for Melitta was created with R.W. Baird & Company. At the same time, a separate investment account with Baird was also established for Werner. Originally, Melitta's Baird account was mistakenly titled in both parties' names. When this error was discovered, the account was changed to Melitta's name at her direction. It is this account which the trial court concluded had been so commingled with other assets that it could not be traced.

Melitta executed a power of attorney appointing Werner as the managing agent of her Baird account. In addition, Werner managed the family's other assets. However, Melitta often helped Werner make investment choices by doing preliminary research for him. Melitta testified that she trusted Werner's investment decisions. Over the course of their marriage, Werner and Melitta had nearly thirty separate investment, savings and checking accounts at a number of different institutions. Additional accounts were discovered as the proceedings below progressed.

Eventually, the Continental stock was sold. The proceeds were used for family purposes, gifts, reinvestment, and deposit to various accounts of the parties. During the marriage, the parties' investments flourished. Melitta and Werner purchased real estate, built a fine home, made significant contributions to charity, and supported the financial and other needs of their children. They also financially assisted relatives who had special needs.

During the course of the marriage, Werner's economic condition also improved. His salary in-

creased from $13,000 to $32,000 for the academic year. He also received approximately $100,000 by gift and inheritance.

In July 1979, Melitta approached the Marshall & Ilsley Bank about opening an account using the assets from her investment account at Baird. Melitta and Werner had lengthy discussions over this issue. Melitta created the M & I account and in late 1979 she transferred her assets from Baird to this account. She also transferred the "Clifford trust" to an M & I account.

In November 1979, Werner and Melitta consulted a Milwaukee attorney for further estate planning advice. Again, no mention was made of the post-nuptial agreement.

Melitta filed for divorce on June 4, 1980. The trial was conducted on three separate dates (November 9 and 27, 1981, and February 26, 1982). At the close of these proceedings, the trial court granted the divorce. The property division issues were taken under advisement.[2] Partial findings of fact and conclusions of law were filed on April 15, 1982. These documents specifically provided for supplemental findings of fact and conclusions of law concerning the property division issues.

Post-trial briefs were filed and a decision regarding the property division was rendered on February 1, 1983. The trial court concluded that enforcement of the post-nuptial agreement would be inequitable since it was "so long forgotten or ignored by the parties and their finances managed to the satisfaction of all in the interim." The court also determined that some of the property inherited by each party remained the sepa-

---

[2]No maintenance was requested by either party.

rate property of such party. The "Clifford trust" was included in this category, and the trust was awarded to Melitta.

However, the court also concluded that Melitta's Baird investment account, before its transfer to the M & I account, had been commingled with other assets such that any inherited portion other than the "Clifford trust" could not be traced. Therefore, the M & I investment account, with a value as of the date of divorce in excess of $1 million, was included in the marital estate. This asset, together with all other marital property, was divided equally.

In an unusual turn, the parties chose not to implement the trial court's decision by reducing it to findings of fact, conclusions of law and judgment. Instead, the parties embarked on negotiations seeking to establish different valuations than those assigned by the court. As a result, this case laid judicially dormant for a substantial time. When these negotiations proved unsuccessful, the parties requested that the court conduct further proceedings. A hearing was held in August 1985. The parties submitted further briefs. The court's final decision was not issued until June 24, 1986. Thus, this action endured in the trial court for over six years.

In its final decision, the trial court reaffirmed its original valuation of Melitta's M & I account (as well as other accounts not in dispute here) as of the date of the divorce. The court also reaffirmed the equal property division. To accomplish such division, the court directed Melitta to pay Werner a "balancing" amount of $481,786.93, after crediting a previous payment of $92,300. Interest at the rate of twelve percent per annum from February 1, 1983, to August 26, 1985, was also ordered. Payment was ordered

within ninety days of entry of the supplemental judgment which was entered October 28, 1986. Additional facts will be provided as discussion of the issues requires.

## APPEAL

### I. Standards of Review

Melitta argues that the trial court erred in its property division rulings. Generally, a property division rests within the sound discretion of the trial court. *Torgerson v. Torgerson,* 128 Wis. 2d 465, 468, 383 N.W.2d 506, 508 (Ct. App. 1986). An exercise of discretion premised upon factual or legal error constitutes an abuse of discretion. *Thorpe v. Thorpe,* 108 Wis. 2d 189, 195, 321 N.W.2d 237, 240–41 (1982). In addition, certain of Melitta's arguments require us to construe and apply the property division statute, sec. 767.255, Stats.[3] Statutory construction presents a question of law and we need not defer to a trial court's conclusion. *Arneson v. Arneson,* 120 Wis. 2d 236, 243, 355 N.W.2d 16, 19 (Ct. App. 1984).

Melitta argues that the trial court erred by concluding that her M & I account could not be traced to her inheritances because the predecessor Baird account had been commingled with other property.

---

[3]This action is governed by sec. 247.255, Stats. (1977), the property division statute in effect at the time of the commencement of the action. We allude to the present statute on most issues because the language of both statutes is similar. When an issue requires specific reference to the language of the earlier statute, we will do so.

We view a tracing or commingling determination by a trial court as presenting a question of fact. Such a finding will not be set aside unless clearly erroneous. Sec. 805.17(2), Stats.

## II. Burden of Proof

Melitta argues that her M & I account is nonmarital property. We must examine the evidence and determine whether it establishes Melitta's claim. This requires us to determine whether the burden of proof on this question has been met.

■ Although no Wisconsin case has specifically established the burden of proof on the question of whether an asset is exempt as gifted or inherited property, we do note that the middle burden of proof—proof to a reasonable certainty by evidence that is clear, satisfactory and convincing—has been required in divorce cases involving allegations of fraud, *Heup v. Heup,* 45 Wis. 2d 71, 77, 172 N.W.2d 334, 337 (1969), or adultery, *Molloy v. Molloy,* 46 Wis. 2d 682, 686, 176 N.W.2d 292, 295 (1970). This is the burden of proof traditionally assigned to cases involving fraud, gross negligence, and civil actions involving criminal acts. *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 299, 294 N.W.2d 437, 457 (1980). Generally, whether an asset is gifted or inherited does not fall into this category. Absent a *Wangen* issue, we conclude that the ordinary burden of proof in civil actions—proof to a reasonable certainty by the greater weight of the credible evidence—also applies for purposes of determining whether an asset is exempt as inherited or gifted property.

Next, we must decide which party carries this burden of proof. This requires us to construe sec. 247.255, Stats. (1977), the property division statute in effect at the time this action was commenced. That statute, in part, provided.

> Any property inherited by either party prior to or during the course of the marriage shall remain the property of such party and may not be subjected to a property division .... .

If an asset is to be exempt from property division under this statute, a showing of the inherited status of such property is obviously required. We conclude that the burden to make such a showing logically rests upon the party asserting such a claim. In this case, that person is Melitta.

Our present property division statute, sec. 767.255, Stats., makes this point even more clearly:

> Any property *shown* to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party .... . [Emphasis added.]

We next address how this burden is met. Section 767.255, Stats., requires that the gifted or inherited status of the property be demonstrated. Case law has further required that the character and identity of such property be preserved. *Trattles v. Trattles,* 126 Wis. 2d 219, 225, 376 N.W.2d 379, 382–83 (Ct. App. 1985). Once the recipient of the gifted or inherited property has established these requirements to the requisite burden of proof, a prima facie case has been

408

made that the subject property is exempt. The opposing party then has the opportunity to establish by sufficient countervailing evidence that the property is not gifted or inherited, or otherwise has lost its exempt status because its character or identity has not been preserved.

Whether a party has met the burden of proof is a question of law which we examine without deference to the trial court's conclusions. *Becker v. State Farm Mut. Auto. Ins. Co.,* 141 Wis. 2d 804, 811, 416 N.W.2d 906, 909 (Ct. App. 1987). Here, there is no question that Melitta established the original inherited status of her property. We now address whether the trial court correctly held that Melitta's proofs failed to demonstrate that this property had been preserved in character and identity.

### III. Character and Identity

As Melitta's Continental stock was transferred to the United States, it was deposited into an investment account created in her name at Baird. This account was managed by Werner and was the subject of countless transactions which variously increased or decreased its value. It was this account which Werner argues was commingled. About six months before the commencement of this action, Melitta transferred the assets of her Baird account to her newly created M & I account. This M & I account was not commingled. Therefore, although the court's commingling determination impacted upon the M & I account, the Baird account was the object of the court's commingling analysis.

## A. Character

Inherited property is non-marital and is exempt from property division. *See* sec. 767.255, Stats. Such property, however, must retain its character and identity if its exempt status is to be preserved. *Trattles,* 126 Wis. 2d at 225, 376 N.W.2d at 382–83.

In support of her claim that the trial court erred in its finding that her inherited property had been commingled, Melitta relies upon cases of the supreme court and the court of appeals which have considered whether the altered character of exempt property served to transmute the non-marital property to marital property. *See Wierman v. Wierman,* 130 Wis. 2d 425, 387 N.W.2d 744 (1986); *Bonnell v. Bonnell,* 117 Wis. 2d 241, 344 N.W.2d 123 (1984); *Trattles,* 126 Wis. 2d 219, 376 N.W.2d 379; *Weiss v. Weiss,* 122 Wis. 2d 688, 365 N.W.2d 608 (Ct. App. 1985).

Melitta's reliance on these cases is misplaced. The trial court's ruling does not rest upon a character/transmutation analysis. Rather, the court's ruling is premised upon an identity analysis. Identity and character are separate concepts. Melitta confuses the two.

Character addresses the manner in which the parties have chosen to title or treat gifted or inherited assets. *See, e.g., Bonnell,* 117 Wis. 2d at 248, 344 N.W.2d at 126–27; *Trattles,* 126 Wis. 2d at 225, 376 N.W.2d at 383; *Weiss,* 122 Wis. 2d at 692–93, 365 N.W.2d at 611. Changing the character of non-marital property can serve to transmute it to marital property. *Trattles,* 126 Wis. 2d at 225, 376 N.W.2d at 383. In such cases, the donative intent of the owner of the

exempt property is an issue. *Id.* at 223–25, 376 N.W.2d at 381–82. Identity, on the other hand, addresses whether the gifted or inherited asset has been preserved in some present identifiable form so that it can be meaningfully valued and assigned. *Id.* at 227, 376 N.W.2d at 383.

We fully accept, as does Werner, that Melitta successfully preserved the character of her inherited property. We need not, therefore, respond to Melitta's various arguments that her inherited property has not been transmuted to marital property. It has not.

## B. Identity

As noted earlier, gifted and inherited property is exempt only if its character *and* identity have been preserved. *Trattles,* 126 Wis. 2d at 225, 376 N.W.2d at 382–83. Melitta contends that the trial court erred in its finding that her inheritance could not be traced and thereby lost its identity.

In making its ruling, the trial court stated:

> [T]his court would have to find that a large portion of such inherited property, and its appreciations and depreciations during the course of almost 30 years, could not be adequately traced. Petitioner's Ex. #(2), a 9/30/81 summary of [the M & I account in Melitta's name] revealed investments in at least 26 different stocks. Petitioner's Ex. #(28), a "List of Accounts of Werner and Melitta Brandt" reveals 23 accounts, mostly banks, which was [sic] depositories of the monies of the parties between 1960 and present. Evidence, testimonial and from exhibits, is uncontradicted that there was a continual movement of monies in and out of accounts, from both parties' sources, inheritances, gifts, salary, and economic growth, which was used for real

411

estate purchases, gifts, settlement of claims, travel, education of children, and maintenance of a desirable standard of living, in this state and elsewhere, during the term of this marriage. With the exception of the funding of the so-called "Clifford trust" this court is unable to segregate the present funds, both as to allocation of source and present value, so as to exclude same from [the] marital estate.

Tracing advises whether a gifted or inherited asset has been preserved in some present identifiable form such that it can be valued and assigned. *See id.* at 227, 376 N.W.2d at 383. Commingling, in and of itself, is not necessarily fatal to the exempt status of a gifted or inherited asset. The critical inquiry is whether, despite the commingling, the inherited or gifted component of the asset can nonetheless be identified and valued. *See id.* At the same time, this inquiry also advises whether the marital component of a commingling asset can be identified and valued. The tracing exercise answers this question.

Our examination of the record satisfies us that the trial court's finding on this question is correct. Our task on appeal is not to independently perform a tracing exercise. Rather, we must determine if the record supports the trial court's finding. To that end, we have examined the record in an attempt to identify and value Melitta's inheritance. While some portion of Melitta's Baird account undoubtedly represents the fruits of her inheritance, we are unable with any degree of certainty to identify or value that portion relating to the inheritance.

Although the Baird account was initially funded with Melitta's inherited assets, the record reveals that

▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆

this account was the subject of countless transactions. Were these transactions limited to withdrawals, a commingling problem would not be present since the account, although diminished, would still consist of inherited assets. However, deposits and additions also came to this fund from various sources, including both parties' salaries, gifts, other inheritances, and other joint and sole accounts. As noted earlier, the parties maintained nearly thirty different sole or joint accounts for investment, savings and checking purposes during the marriage. Funds regularly flowed into, out of, and back and forth between all of these accounts.

We observed in *Trattles* that tracing represents a "complicated exercise capable of producing illogical and inequitable results." *Id.* at 228, 376 N.W.2d at 384. To assign a value to that portion of Melitta's present M & I fund representing her inheritance would produce the very result condemned in *Trattles.* Such a valuation would be totally speculative in light of this evidentiary record.[4]

## IV. Post-Nuptial Agreement

Melitta next claims that the trial court erred in its determination that enforcement of the parties' post-nuptial agreement would be inequitable.

When fashioning a property division, sec. 767.255(11), Stats., requires the trial court to consider:

[4]As an alternative to her tracing argument, Melitta advances several novel theories under which her inheritance might be preserved. These include a "reimbursement" theory and a "de minimis commingling" theory. Although these theories have been adopted in some jurisdictions, they run contrary to previous rulings of the Wisconsin appellate courts that failure to preserve the character and identity of exempt property renders such property marital.

Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

*Button v. Button,* 131 Wis. 2d 84, 388 N.W.2d at 546 (1986), decided after the trial of this case, is the leading Wisconsin case on the subject of marital agreements in divorce actions. *Button* holds that an agreement is inequitable under sec. 767.255(11), Stats., if it fails to satisfy any one of the following three requirements:

(1) Each spouse must make a fair and reasonable disclosure to the other about his or her financial status;

(2) Each spouse must enter into the agreement voluntarily and freely; and

(3) The substantive terms of the agreement dividing the property upon divorce are fair to each spouse.

*Button,* 131 Wis. 2d at 99, 388 N.W.2d at 552.

Under *Button,* the first two requirements assure fairness in the procurement of the agreement. *Id.* at 95–96, 388 N.W.2d at 550–51. This consideration is not at issue in this case.

The third requirement assures substantive fairness. *Id.* at 96, 388 N.W.2d at 551. In addressing this consideration, *Button* states:

Substantive fairness is an amorphous concept. We can set forth general principles, but the courts

must determine substantive fairness on a case by case basis.

*Id.* This consideration requires that the agreement's fairness be assessed not only as of the time of its making but also as of the time of the divorce.

> Clearly an agreement fair at execution is not unfair at divorce just because the application of the agreement at divorce results in a property division which is not equal between the parties or which a court might not order under sec. 767.255. *If, however, there are significantly changed circumstances after the execution of an agreement and the agreement as applied at divorce no longer comports with the reasonable expectations of the parties, an agreement which is fair at execution may be unfair to the parties at divorce.*

*Id.* at 98–99, 388 N.W.2d at 552 (emphasis added).

In rejecting Melitta's request that the agreement be enforced, the trial court observed:

> [B]ecause the court cannot satisfactorily trace all of the commingled funds of the parties, and because the post-nuptial agreement was so long forgotten or ignored by the parties and their finances managed to the satisfaction of all in the interim, the court finds it would be inequitable to enforce same to its literal extent and exclude all inherited property from division of marital assets.

Although ruling without the benefit of *Button,* the trial court's rationale nonetheless squarely addresses the substantive fairness test of *Button.* In effect, the court concluded that circumstances had significantly changed since the agreement's execution such that enforcement would be unfair. This conclusion is supported by certain of the evidence: the

marital agreement resulted from Melitta's family pressure rather than from any genuine desire by the parties to preserve their separate estates; the marital agreement was never resurrected or discussed during the parties' various estate planning activities; the parties did not fully implement the "separate estate" planning recommended by Attorney Callahan; and Melitta directly countered the wishes expressed in her mother's will by turning the management and control of her inherited property over to Werner.

More importantly, the commingling of the parties' assets and the resultant inability to trace makes a meaningful enforcement of the marital agreement impossible. A party's request to enforce a marital agreement carries with it, we conclude, a concomitant responsibility to trace the property such that a reliable identification and valuation of the assets governed by the agreement can be made. Melitta has failed in this responsibility here. Enforcement of the agreement under these circumstances would not only have been inequitable, it would have been impossible. The trial court did not abuse its discretion in declining to enforce the post-marital agreement.

## V. Hardship

Melitta next argues that the trial court erred by including her inherited property in the marital estate without a threshold finding of hardship. Section 767.255, Stats., provides, in part:

> Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance ... may not be subjected to a property division

416

under this section except upon a finding that refusal to divide such property will create a hardship on the other party ... .

This language is clear and unambiguous. Gifted and inherited property is subject to division *only* if a hardship is found. Such a finding does not alter the non-marital status of such property; it merely permits its division. Here, however, Melitta's inherited property was commingled and thereby was converted from non-marital to marital property. In such a setting, a finding of hardship is not a prerequisite to the division of such property.

## VI. The Clifford Trust

In 1969, a block of Continental stock was used to fund a "Clifford trust" created for the benefit of the Brandt children.[5] From the corpus of this trust, two distributions of approximately $150,000 each were made to Melitta; one in 1978 and another in 1980. While the trial court returned the corpus of the "Clifford trust" to Melitta as her preserved inherited

[5]In its typical form, a "Clifford trust" is a short-term trust lasting for at least ten years, with the income payable during this period to a designated beneficiary and the principal reverting to the donor, the donor's inter vivos trust, or the donor's estate on termination of the trust. The primary purpose of such a trust is to shift income for a limited period of time from the donor, in a high tax bracket, to another taxpayer, in a lower tax bracket. J. Farr & J. Wright, *An Estate Planner's Handbook* sec. 16, at 88–89 (4th ed. 1979 & Supp. 1987). The Tax Reform Act of 1986 made significant changes with respect to this type of trust with an anticipated curtailment in its use. *Id.; see* 226 U.S.C.A. secs. 673, 674 (West Supp. 1988).

property, these distributions were included in the marital estate. This, Melitta claims, was error.

The 1978 distribution was commingled with other assets of the parties and cannot be traced. The inclusion of this distribution in the marital estate was proper.

The 1980 distribution, however, is traceable by time frame and account number into Melitta's separately maintained M & I account. Melitta's Baird account, which we have earlier concluded was commingled with other assets, *see supra* sec. II, is not implicated in this 1980 distribution from the "Clifford trust." Upon appeal, Werner does not dispute that Melitta's M & I account was the repository for this distribution.

A property division rests within the sound discretion of the trial court. *Schwegler v. Schwegler,* 142 Wis. 2d 362, 364, 417 N.W.2d 420, 422 (Ct. App. 1987). However, an exercise of discretion premised upon factual or legal error constitutes an abuse of discretion. *Thorpe,* 108 Wis. 2d at 195, 321 N.W.2d at 240–41. The trial court's ruling that a portion of Melitta M & I account constituted marital property is error to the limited extent that it included the 1980 "Clifford trust" disbursement in the marital estate. This component of Melitta's M & I account is still identifiable and can be valued. Such property is non-marital and is exempt from the property division. We reverse this portion of the judgment and remand the case to the trial court to modify the property division accordingly.

## VII. Tax Consequences

Next, Melitta argues that compliance with the property division will require her to sell some of her

holdings with a resultant income tax liability. She contends the trial court erred in failing to consider the tax ramifications of its rulings.

In dividing the marital property upon divorce, the trial court is directed to consider the tax consequences to each party. Sec. 767.255(10), Stats.; *Ondrasek v. Ondrasek*, 126 Wis. 2d 469, 480, 377 N.W.2d 190, 194 (Ct. App. 1985). If the evidence reveals the likelihood of a taxable event or if the property division triggers such an event, the court must address the tax consequences. *Id.*

Here, we acknowledge that the trial court's original 1983 ruling dividing Melitta's M & I account would likely have triggered a taxable event. As such, the court arguably erred in failing to take the tax consequences into consideration. However, despite the court's "final" decision in this matter, the parties did not reduce the rulings to final judgment form. Instead, they embarked upon an "extra-judicial" negotiating process seeking to supplant the court's rulings with their own agreement. When this process failed, the parties still did not accept the court's earlier rulings. Instead, they applied to the court for further proceedings, asking the court to resolve their post-trial differences and to make new valuation determinations.

At these later proceedings, the parties, for the first time, alluded to possible tax consequences. However, these references were vague and uncertain. At one point, the parties even represented to the trial court that the tax consequences would be handled by the parties through the filing of amended returns or by their own private tax strategies.

██ Most importantly, the parties failed to present the trial court with any evidence or other reliable data as to the tax consequences of the court's then nearly three-year-old decision. We have previously decried this all-too-common state of the record in divorce cases. *See Laribee v. Laribee*, 138 Wis. 2d 46, 52, 405 N.W.2d 679, 682 (Ct. App. 1987). The result of this case is not rendered unconscionable because of the trial court's failure to address this issue which Melitta did not raise. *Id.*

## CROSS-APPEAL

### I. Failure to Award Interest from the Date of Divorce

The trial court awarded Werner interest on the property division from the date of the original decision, February 1, 1983, to the date of the post-trial hearing, August 26, 1985, and also from July 17, 1986, until receipt of the payment.[6] On cross-appeal, Werner contends that the trial court should have awarded interest on the property division from the date of the divorce.

██ In response, Melitta challenges the award of any interest to Werner on the property division under sec. 814.04(4), Stats., or applicable case law. However, Melitta failed to raise this issue at the trial court level and she does not raise it in her direct appeal.

[6]The hiatus in the interest-earning period between August 26, 1985, and July 17, 1986, represents the period of time the trial court had its earlier decision under reconsideration at the request of the parties.

Therefore it is waived. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980).

As to Werner's claim on the cross-appeal, we observe that the allowance of interest on the balance due in a property division payable in installments is within the discretion of the trial court. *Overson v. Overson,* 140 Wis. 2d 752, 756, 412 N.W.2d 896, 897 (Ct. App. 1987). When the trial court made its initial decision in February 1983, no interest was awarded on the payout to Werner because no delay in the payment was anticipated. The interest issue arises only because the parties chose not to immediately implement the court's decision. Instead, as previously noted, they embarked on their own independent attempt to achieve a different resolution of the economic issues.

The trial court was the in the best position to determine whether an award of interest to Werner was warranted because of the protracted delay in the payout from Melitta. The highly unorthodox actions of the parties brought on much of the delay in this case. In light of such circumstances, we choose not to substitute our judgment for that of the trial court in an area reserved for trial court discretion.

## II. Valuation Date

Werner next argues that due to the unusual and exceptional intervening circumstances, the assets subject to the property division should have been valued on a date other than the date of divorce. Wisconsin law requires that assets be valued as of the date of divorce, although special circumstances may warrant deviation from this rule. *Schinner v. Schinner,* 143

Wis. 2d 81, 98, 420 N.W.2d 381, 388 (Ct. App. 1988). Werner argues that special circumstances exist in this case because of the four and one-half year period between the date of the divorce and the court's final decision.

While this period of time is unusual, we do not conclude that it constitutes the "special circumstances" contemplated under the case law. As noted earlier, the parties brought much of this condition upon themselves. Werner's share of this responsibility lies in his insistence on a novel but unpersuasive valuation theory which would have permitted him to share in the substantial appreciation to Melitta's M & I account which occurred while these issues remained in a prolonged state of judicial limbo. We envision the "special circumstances" rule as applying to conditions over which a party has little or no control—not where a party's own conduct has contributed to the special circumstances.

### III. Effect of Sale of Inherited Property

The property division statute in effect at the time this action was commenced did not provide that property *acquired* with gifted or inherited property was also exempt.[7] The broadening of this exemption to

---

[7]Section 247.255, Stats. (1977), provided in part as follows:

Any property inherited by either party prior to or during the course of the marriage shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage .... .

Section 767.255, Stats., now reads in pertinent part:

after-acquired property did not occur until enactment of the statute in its present form. From this, Werner argues that the sale of Melitta's inherited Continental stock and its conversion into other property rendered newly purchased assets marital property under the statute then in effect.

We disagree. Werner's interpretation of the prior statute would impose unreasonable restrictions on the alienation of inherited property. No sale or reinvestment of such property would be possible without the concomitant loss of the property's exempt status. Absurd or unreasonable results are to avoided when construing statutes. *State v. Michels,* 141 Wis. 2d 81, 88, 414 N.W.2d 311, 313 (Ct. App. 1987). The legislature merely clarified the present statute by expressly extending the exemption to property acquired with gifted or inherited property. We cannot conclude that the legislature thereby intended such property to be non-exempt under the prior statute.

No costs to either party.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.

Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party .... .