In the Matter of Gerald M. GEISE, Jr., Debtor.

R. Arthur LUDWIG, Trustee, Plaintiff,

v.

Carol M. GEISE, Defendant.

Bankruptcy No. 88–00792.
Adv. No. 90–0240.

United States Bankruptcy Court, E.D. Wisconsin.

July 19, 1991.

Jeffery D. Nordholm, for trustee.

Carol Geise, pro se.

## MEMORANDUM DECISION

C.N. CLEVERT, Chief Judge.

This adversary proceeding was tried before the court on February 11, 1991, on a complaint filed by the trustee, R. Arthur Ludwig, alleging that Carol M. Geise (Carol), the non-debtor spouse of Gerald Geise (Gerald), is in possession of certain marital property constituting property of this Chapter 7 estate. *See* 11 U.S.C. § 541(a)(2).

The complaint asks that Carol be ordered to deliver the property to the trustee and to provide him with an accounting as required by 11 U.S.C. § 542(a).

### FINDINGS OF FACT

Carol and Gerald were married in Wisconsin on May 17, 1986. Carol is employed at the Agricultural Stabilization and Conservation Service, and Gerald is self employed. On December 15, 1986, Carol and Gerald, at the suggestion of Carol's banker, signed a Statutory Individual Property Classification Agreement (S.I.P.C.A.) that terminated January 1, 1987. *See* 766.587 Wis.Stats.[1] This agreement was not shown to any of Gerald's creditors. On January 29, 1988, Gerald filed a Chapter 13 bankruptcy that was converted to Chapter 7 on December 13, 1988.

Prior to and during her marriage to Gerald, Carol deposited her paychecks into a checking account at First Interstate Bank. The account had a balance of $962.16 [2] on the petition date.

---

**1.** 766.587 Statutory individual property classification agreement. (1) Generally. (a) Spouses may execute a statutory individual property classification agreement under this section to classify all the property of the spouses, including property presently owned and property acquired in the future but before the agreement terminates, as the individual property of the owner. Ownership of the property of the spous-es is determined as if it were December 31, 1985.

(3) Effective Period

(b) An agreement under this section terminates on January 1, 1987.

**2.** In his proposed Findings of Fact and Conclusion of Law, the trustee claims that there was $1486.22 in the checking account, however, in the Joint Document, prepared and signed by the

Carol continues to maintain in her individual name an investment portfolio which she owned when she married Gerald. The following chart depicts the portfolio on all pertinent dates.

| Piper, Jaffrey & Hopwood—IRA | 5/17/86 | 1/1/87 | 1/29/88 |
|---|---|---|---|
| **Philadelphia Electric** | | | |
| Preferred | 63 | 63 | 63 |
| Common | 150 | 247 [3] | 247 |
| Wellesley III B | 4 | 4 | 4 |
| Money Market | 195.550 | 461.13 | 524.41 |
| Investment Quality Inc. | 206.528 | 260.278 | 264.229 |
| Washington Energy | — | — | 55 |
| **Piper, Jaffrey & Hopwood General Investment Fund** | | | |
| Archer, Daniels, Midland | 115 | 0 | 0 |
| Champion International | 100 | 100 | 100 |
| Detroit Edison | 70 | 70 | 70 |
| Money Market | 5107.790 | 103.03 | 1.12 |
| Air Wisconsin | | 100 [4] | 100 |
| Golden Valley Microwave | | 100 [5] | 200 [6] |

On December 31, 1986, Carol purchased a house in Appleton, Wisconsin, in her individual name. She made a $9100 down payment that included $5000 from her General Investment Fund Money Market account and obtained a $40,900 mortgage from Mutual Savings and Loan Association of Wisconsin. Gerald signed the mortgage note with the statement that he was releasing any homestead interest he may have had in the home. Thereafter, Carol made monthly mortgage payments from her salary. As a result, the mortgage balance was reduced to $40,640.00 when Gerald's Chapter 13 petition was filed.

## DISCUSSION

Although the Bankruptcy Code does not define "property", § 541 of the Bankruptcy Code states that the bankruptcy estate consists of all legal and equitable interests of the debtor in property as of the commencement of the case, including interests of the debtor and the debtor's spouse in community property.[7] In bankruptcy, property rights of the debtor and the debt-

trustee's attorney, he acknowledges that the account contained $962.16 when the petition was filed.

3. On August 26, 1986, shares from IRS, Investment Quality Inc. were sold and the proceeds used to purchase 97 shares of Philadelphia Electric common stock.

4. On December 4, 1986, shares from General Investment money market fund were sold and proceeds were used to purchase 100 shares of Air Wisconsin.

5. Shares from General Investment money market fund were sold and proceeds were used to purchase 100 shares of Golden Valley Microwave.

6. Increase due to 2 for 1 split.

7. 11 U.S.C. § 541. Property of the estate.

(a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

or's spouse are determined under applicable state law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *See also* 4 COLLIER ON BANKRUPTCY, 541–76 (15th ed. 1986) (State property law determines ownership rights in property and reference to these rights circumscribes the property's treatment under the Bankruptcy Code.) Consequently, Carol and Gerald's property interests are determinable under Wisconsin law.

The trustee maintains that the Money Market IRA, the Money Market General Investment Fund, Investment Quality Inc., Washington Energy and 97 shares of Philadelphia Electric Common Fund are property of the bankruptcy estate because dividends and interest earned by these accounts were reinvested or used to purchase additional shares after Carol and Gerald married. He contends that the Air Wisconsin, Washington Energy, and Golden Valley Microwave stock are marital property because they were purchased with Money Market funds. In addition, he argues that Golden Valley Microwave's 2 for 1 stock split transformed all shares of that stock into marital property that became property of the estate. Lastly, he asserts commingling marital with individual property caused Carol's checking account balance with Interstate Bank and the home purchased in Carol's name to become marital property subject to turnover.

Carol, on the other hand, asserts that because her investments were made prior to her marriage to Gerald and before termination of the S.I.P.C.A., Gerald had no interest in the stock when his bankruptcy was filed. She further contends that Gerald neither managed nor controlled any of the investments. Lastly, she claims that she and Gerald kept their finances separate and that their individual property and marital property were not mixed. She concludes that the checking account and real estate are her individual property and that turnover should be denied.

\*    \*    \*    \*    \*    \*

The starting point in applying the Wisconsin Marital Property Act is to classify the property in question as marital or individual property. *In re Marriage of Poindexter,* 142 Wis.2d 517, 538, 419 N.W.2d 223 (1988). The Wisconsin Marital Property Act presumes that all property of married persons is marital property, 766.31(2) Wis.Stat., "unless it can be proven that the property is classified otherwise by chapter 766." MARITAL PROPERTY LAW IN WISCONSIN, State Bar of Wisconsin, CLE Books, § 2.22a (1990). To overcome the presumption, Carol must be able to clearly trace the original individual property, *See* 766.63(1) Wis.Stats., and prove by a fair preponderance of the evidence that "the nonexistence of the presumed fact is more probable than its existence." 903.01 Wis. Stats. *See also Brandt v. Brandt,* 145 Wis.2d 394, 407, 427 N.W.2d 126 (1988) (Proof to reasonable certainty by greater weight of credible evidence is required in determining whether a marital estate asset is exempt as inherited or gifted property, absent fraud, gross negligence or civil action involving criminal acts.); *Kruse v. Horlamus Industries, Inc.,* 130 Wis.2d 357, 359, 387 N.W.2d 64 (1986) ("Wisconsin case law has consistently applied the middle burden of proof only to those civil cases containing a criminal element, fraud, or gross negligence." Absent such a finding, the ordinary or lowest burden is utilized.) If individual property and marital property have been commingled and cannot be re-segregated or identified, the statutory presumption prevails. 766.63 Wis.Stats. *See also Harris v. Harris,* 765 S.W.2d 798, 802 (Tex.App.1989).

In order to classify the property under the Act, it is necessary to ascertain Carol and Gerald's "determination date." *Poindexter,* 142 Wis.2d at 538, 419 N.W.2d 223. Under § 766.01(5) Wis.Stats.[8], May 17, 1986, the date of Carol and Gerald's marriage, is the determination date from which

---

**8.** 766.01 Definitions. In this chapter:
(5) "Determination date" means the last to occur of the following:
(a) Marriage.

(b) 12:01 a.m. on the date that both spouses are domiciled in this state.
(c) 12:01 a.m. on January 1, 1986.

their property rights are ascertained. *See* 766.03(1) & (2) Wis.Stats.

■ It is clear that most of the property in question stemmed from individual property Carol owned on May 17, 1986. *See* 766.31(6) Wis.Stats.[9] It is equally clear that the S.I.P.C.A. classified all property owned and acquired by Carol or Gerald between May 17, 1986, and December 31, 1986, as individual property of the acquiring spouse. *See* 766.587(1)(a) Wis. Stats.; MARITAL PROPERTY LAW IN WISCONSIN at § 7.15c(2). Furthermore, termination of the agreement on January 1, 1987, did not affect the classification of assets acquired prior to that date. *See* MARITAL PROPERTY LAW IN WISCONSIN at § 7.15c(2).

■ The trustee correctly argues that a S.I.P.C.A. is only effective against creditors who are furnished a copy of the document before extending credit, and that Carol and Gerald did not provide a copy to any creditor, except for Carol's banker. Moreover, he contends that the S.I.P.C.A. did not effectively shield Carol's property from creditors who extended credit to Gerald while the agreement was in force and that he steps into the shoes of such creditors.

■ At trial, the trustee failed to prove that any of Gerald's creditors extended credit to him between May and December of 1986. However, after trial, he attempted to remedy this by asking the court to take judicial notice of a $100 claim filed by the Wisconsin Department of Revenue for 1987 sales taxes.

Because Carol did not oppose the request and Rules 201(b)(2) and 201(f) of the Federal Rules of Evidence authorize judicial notice to be taken at anytime during a proceeding, the court grants the trustee's motion. However, doing so does not change the outcome.

■ The Wisconsin Department of Revenue is not a creditor as defined in

§ 766.01(2r)(a) and (b) and 766.587 Wis. Stats. or a merchant who regularly extends credit, notwithstanding the trustee's contrary assertion. *See also* § 421.301(16) Wis.Stats. It follows that the sales taxes owed by Gerald did not result from an extension of credit by the W.D.R.. Moreover, the court must find that Carol and Gerald's S.I.P.C.A. was effective against all creditors, as well as the trustee, and that Carol's individual property is not property of the estate subject to turnover based on the above stated theory.

Nonetheless, the trustee further argues that Carol commingled her individual property with marital property after the S.I.P.C.A. expired and thereby transmuted all her individual property into marital property he may recover as property of the estate. However, he is only partially correct.

■ Mixing marital property with individual property does not reclassify the individual property to marital property if the individual property can be traced. *See* 766.63(1) Wis.Stats. The record establishes that marital property—Carol's personal income and stock dividends—was mixed with her individual property after the S.I.P.C.A. terminated. On the other hand, Carol traced the property and identified its marital and individual components. Consequently, Carol is only required to turnover to the trustee the property identified in the following discussion as marital property, *See* 11 U.S.C. § 541(a)(2), for distribution in accordance with 11 U.S.C. § 726(c).

\* \* \* \* \* \*

■ Carol's IRA portfolio did not change significantly after termination of the S.I.P.C.A. and Gerald's bankruptcy filing on January 19, 1988. Her holdings—as reflected on page 911—were the same on January 1, 1987, and the petition date, with the exception of 55 shares of Washington Energy Company stock purchased with IRA stock dividends on August 3, 1987, 3.949 shares of Investment Quality Interest and 63.28 IRA money market shares ac-

---

**9.** 766.31 Classification of property of spouses. (6) Property owned at a marriage which occurs after 12:01 a.m. on January 1, 1986, is individual property of the owning spouse if, at the marriage, both spouses are domiciled in this state.

quired through reinvestment of stock dividends and interest that were marital property. Hence, 63 shares of Philadelphia Electric preferred, 247 shares of Philadelphia Electric common and 4 shares of Wellesley IIIB that Carol held January 1, 1987, remain individual property and need not be turned over to the trustee.

■ On the other hand, the 55 shares of Washington Energy Company stock, the 3.949 shares of Investment Quality Interest stock and the 63.28 shares of IRA money market are now marital property because they were purchased with marital property. Income on nonmarital property earned after the S.I.P.C.A. was no longer in effect is marital property. 766.31(4) Wis.Stats. Thus, they are property of the estate and, as such, must be turned over to the trustee.

■ There were no major changes in Carol's General Investment Fund between January 1, 1987, and January 29, 1988. Although the Golden Valley Microwave stock split after the S.I.P.C.A. terminated and prior to the petition date, income as defined in § 766.10(10) does not include stock splits involving additional shares of the same company. Therefore, 100 shares of Champion International, 70 shares of Detroit Edison, 100 shares of Air Wisconsin, and the Golden Valley Microwave stock are individual property Carol may retain.

■ Carol stipulated that stock dividends were reinvested in the general money market fund after January 1, 1987, and she did not trace any individual property in the account. Thus, the 1.12 shares held in the general money market fund on January 29, 1988, must be turned over to the trustee.

■ The trustee claims that he is entitled to receipt of $962.16 in Carol's checking account at First Interstate Bank on the petition date. The court agrees. Section 766.31(4) Wis.Stats. provides, with a few inapposite exceptions, that income earned or accrued by a spouse during marriage and after the determination date is marital property. Consequently, the mixture of Carol's post January 1, 1987, salary with funds deposited into the account prior to that date, transmuted all the funds into marital property.

■ Lastly, the trustee opines that he is entitled to extract $11,000 equity from Carol's home. The property was purchased on December 31, 1986, for $50,000, and had a fair market value of $62,000 on the date of trial. Assuming the property appreciated on a straight line basis, the real estate had a market value of $53,120 on January 29, 1988. This becomes the baseline for computing Carol and Gerald's individual and marital property interests.

The evidence shows that Carol obtained the mortgage while the S.I.P.C.A. was in effect. The loan was based on her ability to pay and Gerald signed the mortgage stating that he was relinquishing any homestead interest he had in the property. Also, the $9100 downpayment, including $5000 from the money market account, was made from Carol's separate property. Thus, there is no doubt that the home was initially acquired with Carol's individual property.

However, because mortgage payments were made from marital property after January 1, 1987, the real estate has both individual and marital property components. To determine the percentage attributable to each component, this court is adopting the following formula used in *In re Marriage of Moore (Moore v. Moore)*, 168 Cal.Rptr. 662, 665, 618 P.2d 208, 211, 28 Cal.3d 366 (1980).

The individual property percentage interest is determined by crediting the individual property with the down payment and the full amount of the loan less the amount by which the marital property payments reduced the principal balance [$9,100 + ($40,900 − $260) = $49,740]. This sum is divided by the purchase price to arrive at the individual property percentage share ($49,740 divided by $50,000 = 99.48%). To calculate the dollar value of the individual property component, the amount of appreciation is multiplied by the individual property percentage share and added to the amount of equity paid from individual

funds [ ($3,120 × 99.48%) + $49740 = $52,-843.78]. The marital property percentage interest is found by dividing the amount by which marital property payments reduced the principal by the purchase price ($260 divided by $50,000 = .52%). Therefore, the marital property component would be $276.22, which represents the amount of appreciation attributable to marital funds (.52% of $3,120 added to the amount of equity paid by marital funds ($260).

Considering the trifling sum that was commingled with Carol's individual property, the high cost of selling real estate, the meager amount the estate would realize, and the injustice that would be created by a turnover, this court concludes that the home remains individual property. Although the Wisconsin Court of Appeals implied in *Brandt*, 145 Wis.2d at 413 n. 4, 427 N.W.2d 126, that the "de minimis commingling" theory is "not appropriate in a divorce context and [is] not persuasive in a property law context," MARITAL PROPERTY LAW IN WISCONSIN, supp. 3–14 (1991), the circumstances of this case are such as to require the theory be applied by this court. This is consistent with the legal maxim, "de minimis non curat lex. The law does not care for or take notice of very small or trifling matters." BLACK'S LAW DICTIONARY, 6th Ed.1990.[10]

## CONCLUSION

For the reasons stated, which constitute this court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, Carol Geise is to deliver to the trustee 63.28 shares of the IRA Money Market Fund, 55 shares of Washington Energy, 3.949 shares of Investment Quality Interest, 1.12 shares of the General Money Market Fund, and $962.16 from the checking account at First Interstate Bank.

---

**10.** While it is true that the Investment Quality Interest and General Money Market shares are of little value, turnover will not cause injustice. Nonetheless, the trustee should consider abandoning these assets. *See* 11 U.S.C. § 544.