# IN RE the MARRIAGE OF: Florence S. BUTTON, Petitioner-Appellant,

v.

# Charles H. BUTTON, Respondent.

Supreme Court

*No. 84-2337. Argued April 29, 1986.—Decided June 20, 1986.*

(Also reported in 388 N.W.2d 546.)

For the petitioner-appellant there were briefs by *Randall R. Garczynski* and *Clair Law Offices, S.C.,* Delavan, and oral argument by *Mr. Garczynski.*

For the respondent there was a brief by *Clark Dempsey* and *Dempsey Law Offices,* Whitewater, and oral argument by *Mr. Dempsey.*

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of the circuit court for Walworth county, Circuit Judge Robert D. Read, dividing property upon divorce in accordance with the terms of a written property agreement which the circuit court found binding under sec. 767.255(11), Stats. 1983–84.[1]

---

[1] Both parties agree that sec. 767.255(11) applies to the 1974 written agreement. In *Hengel v. Hengel,* 122 Wis. 2d 737, 743, 365 N.W.2d 16 (Ct. App. 1985), the court of appeals held that sec. 767.255(11), Stats. 1983–84, which was enacted in 1977, applies to agreements executed before the effective day of the statute.

This court took jurisdiction of the appeal upon certification by the court of appeals. Secs. 808.05(2), 809.61, Stats. 1983–84.

Section 767.255 provides for division of property upon divorce. The statute requires the court to presume that certain property shall be divided equally between the parties but authorizes the court to alter this distribution after considering certain factors, including any written agreement between the parties. The statute provides that a written agreement for property distribution shall be binding upon the court and the court shall presume any agreement to be equitable as to both parties. No written agreement shall be binding, however, where the terms of the agreement are inequitable as to either party. Section 767.255 provides, *inter alia,* as follows:

> "Upon every judgment of annulment, divorce or legal separation . . . the court shall divide the property of the parties and divest and transfer the title of any such property accordingly . . . Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance . . . shall remain the property of such party. . . . The court shall presume that all other property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:
> "...
> "(11)  Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either

party. The court shall presume any such agreement to be equitable as to both parties."

The circuit court concluded that the provisions in the parties' 1974 postnuptial written agreement dividing the property in the event of a divorce were binding under sec. 767.255(11), Stats. 1983–84, but that the provisions waiving support and alimony were "not enforceable as being against public policy and contrary to the laws of the State of Wisconsin." Florence S. Button appeals only from that part of the judgment directing a division of property pursuant to the 1974 written agreement; neither party appeals from that part of the judgment awarding limited maintenance.

As a result of dividing the property at the dissolution of this 14-year marriage according to the 1974 agreement, the circuit court awarded Mrs. Button assets valued at $7,882.10 and awarded Mr. Button assets valued at $255,103.99. The circuit court's entire finding relating to the division of property in the event of divorce is as follows:

"The Court notes that Mrs. Button was 54 years of age when she signed the June 19, 1974 agreement, some five years after the initial agreement and the marriage of the parties. The court also notes that she had already given her daughter $12,000 from funds brought to the marriage by her from funds she received at the time of the death of her first husband. She clearly wanted to be able to dispose of her own property as she saw fit and it is reasonable to assume she understood that Mr. Button would be able to do the same thing as a result of this agreement. In light of the entire record, the Court is convinced that Mrs. Button was well aware of the consequences of the June 19, 1974 agreement

and it is enforceable as written with regard to the distribution of the property."

The court of appeals certified the following issue: "When is equitableness of an antenuptial or postnuptial agreement [under sec. 767.255(11)] to be determined—as of the time of execution of the agreement or as of the time of divorce?" Although the circuit court found the agreement equitable, it did not state whether it examined the agreement as of the date of execution or as of the divorce.

The parties present a second issue, namely, what constitutes an equitable agreement? The circuit court apparently considered four factors: Mrs. Button's age, Mrs. Button's transfer to her child of property which she brought into the marriage, Mrs. Button's desire to retain the power to dispose of her separate property, and Mrs. Button's awareness of the consequences of the postnuptial agreement.

This court is addressing both of these issues for the first time. We conclude that an agreement is inequitable under sec. 767.255(11) if it fails to satisfy any one of the following requirements: each spouse has made fair and reasonable disclosure to the other of his or her financial status; each spouse has entered into the agreement voluntarily and freely; and the substantive provisions of the agreement dividing the property upon divorce are fair to each spouse. The first two requirements must be assessed as of the time of the execution of the agreement. As we shall explain, the third requirement is also assessed as of the time of the execution of the agreement and, if circumstances significantly changed since the agreement, then also at the divorce.

Because the circuit court did not consider and apply the three requirements discussed herein, we reverse that part of the judgment ordering property division on the basis of the written agreement and remand the cause to the circuit court to consider whether the terms of the written agreement are inequitable and not binding under sec. 767.255(11) under the test set forth herein.

The relevant facts are as follows. The parties married on September 12, 1969, having known each other for approximately five years prior to their marriage. Both parties had been married previously; Mrs. Button had one adult child from her prior marriage and Mr. Button had three adult children. When they were married, Mrs. Button was 50 years old, and Mr. Button 61 years old. Mrs. Button began the divorce action in 1983.

Prior to the marriage, Mrs. Button had acquired some personal property and other assets with a total worth of no more than $3,000 and a life insurance policy on the life of her former husband in the amount of $12,000. Mr. Button had an upholstery business, a stock portfolio, personal property and real estate upon which a duplex residence and the business were located. He had inherited a substantial part of this property and, under sec. 767.255, inherited property is considered separate property not generally subject to division upon divorce.

The parties entered into a written prenuptial agreement on August 15, 1969. While this prenuptial agreement is not the agreement in issue here, the facts relating to the execution of the 1969 agreement are stated because they may bear on the determination of whether the 1974 agreement is inequitable.

Mrs. Button testified that there was no discussion of Mr. Button's finances prior to their marriage, although she was aware that he owned a duplex house, an upholstery business, a car, and a snowmobile. Mrs. Button also testified that Mr. Button's attorney told her that "if [you] wanted to take it to another attorney [you] could, but if [you] did that then you would say that you didn't trust Charles and Charlie said that's right and [the attorney] said the same thing." Mrs. Button also stated that she did not read the agreement before signing it. Mr. Button's attorney testified that he believed that both parties understood the agreement, although he has no record of any financial disclosures being made between the parties. Mr. Button testified that he did not make any financial disclosures to Mrs. Button. Neither Mrs. Button nor Mr. Button's attorney had any recollection of Mrs. Button's being advised of the rights she was surrendering by signing the agreement.

Mrs. Button testified that soon after their marriage, Mr. Button instructed her to stop working outside the home because her contribution to the marriage would be greater if she devoted all her time to being a homemaker. Mrs. Button had been employed as a produce worker at a supermarket. Mr. Button denied that he made this demand. Mrs. Button did cease to work outside the home within 6 months after the marriage. She testified that she worked hard in the house. After the marriage, Mr. Button continued working outside the home as an upholsterer.

In 1970 Mrs. Button received $12,000 from the life insurance policy on the death of her first husband. These funds were held in her own name until 1974, when she placed the funds in a joint account with her

daughter. In 1982, apparently after the parties separated, Mrs. Button transferred $12,000 to her daughter. Mrs. Button's daughter testified that she used these funds for Mrs. Button.

In June 1974, after Mr. Button sold his upholstery business to his son for $85,000, the parties signed a postnuptial agreement which expressly rescinded and terminated the 1969 prenuptial agreement. Mr. Button's assets had appreciated in value during the marriage to approximately $110,000. Mrs. Button's assets were essentially the same as before marriage, except that sometime during the marriage Mr. Button gave her a joint interest in shares of stock having a value of $3,000. During the marriage Mr. Button paid for the household expenses and vacation trips from his income and property.

The 1974 agreement—which is the agreement to be tested under sec. 767.255(11) —was drafted by Mr. Button's attorney. Mrs. Button did not have independent counsel. She testified that the agreement was never explained to her and that no financial disclosures were made. Mrs. Button also testified, however, that she was generally aware of Mr. Button's property, that they filed joint tax returns and that she had access to copies of the returns. She also testified that she was unfamiliar with tax returns, having never prepared one herself. Furthermore, Mr. Button acknowledged that the full extent of his financial holdings could not be discerned from his tax returns.

The 1974 postnuptial agreement provided that in the event of a divorce all property owned by either party prior to marriage would remain the separate property of that party and that all property acquired after the marriage would be deemed the separate prop-

erty of the party acquiring the property. In the event of divorce, Mrs. Button was to accept as full property settlement her own articles of personal property, her own separate property and one-half of all properties acquired jointly by the parties.

At the time of divorce Mrs. Button was in ill health, confined to a skilled care nursing home receiving public assistance. In addition to receiving $255,103 in property, Mr. Button was working parttime after the divorce.

■
We now turn to the question of what is an inequitable agreement for purposes of sec. 767.255(11). The statute does not define inequitable. We must interpret inequitableness in light of the language and purpose of sec. 767.255(11). [2]

Section 767.255(11) permits marital partners to reach their own agreements about financial arrangements. Section 767.255(11) states that the court is to presume the agreement dividing property is equitable. We read this provision, which puts the burden of production of evidence and the burden of persuasion on

[2] Commentators have disagreed regarding the extent to which and the manner in which courts should review marital agreements. *See, e.g.,* Clark, *Antenuptial Contracts,* 50 U. Colo. L. Rev. 141 (1979); Klarman, *Marital Agreements in Contemplation of Divorce,* 10 U. Mich. J.L. Reform 397 (1977); Oldham & Caudill, *A Reconnaissance of Public Policy Restrictions upon Enforcement of Contracts between Cohabitants,* 18 Fam. L.Q. 93 (1984); Oldham, *Premarital Contracts Are Now Enforceable, Unless. . . ,* 21 Houston L. Rev. 757 (1984); Sharp, *Fairness Standards and Separation Agreements: A Word of Caution on Contractual Freedom,* 132 U. Pa. L. Rev. 1399 (1984); Comment, *Antenuptial Contract to Circumvent Equitable Distribution in New Jersey under the Revised Divorce Act,* 12 Rutgers L.J. 283 (1981).

the spouse challenging the agreement, as demonstrating the legislature's interest in giving effect to the parties' agreement to the extent possible.

The legislature has recognized that prenuptial and postnuptial agreements dividing property serve a useful function. They allow parties to structure their financial affairs to suit their needs and values and to achieve certainty. This certainty may encourage marriage and may be conducive to marital tranquility by protecting the financial expectations of the parties. The right to enter into an agreement regulating financial affairs in a marriage is important to a large number of citizens.

Section 767.255(11), however, sets forth a competing public policy. While sec. 767.255(11) embodies the public policy of freedom of contract, it also empowers a divorce court to override the parties' agreement if the agreement is inequitable. This latter policy reflects the unique role of the marriage contract in society. Marriage is not simply a contract between two parties. Marriage is a legal status in which the state has a special interest. Certain rights and obligations dictated by the state flow from marriage, and the legislature requires a divorce court to scrutinize an agreement between the spouses carefully. The parties are free to contract, but they contract in the shadow of the court's obligation to review the agreement on divorce to protect the spouses' financial interests on divorce.

After studying the language and purpose of sec. 767.255(11), we conclude that an agreement is inequitable under sec. 767.255(11) if it is unfair either in its procurement or in its substantive provisions.

94

■ Fairness in procurement depends on two factors: whether each spouse makes fair and reasonable disclosure to the other spouse of his or her financial status, and whether each spouse enters into the agreement voluntarily and freely. Obviously these two factors are determined as of the date of the execution of the contract. If the parties fail to satisfy either of these factors, the agreement is inequitable under sec. 767.255(11).

An agreement is inequitable if either spouse has not made fair and reasonable disclosure to the other of his or her assets, liabilities and debts. A party might not have entered into the agreement had she or he known the facts. Where it can be shown that a spouse had independent knowledge of the opposing spouse's financial status, this independent knowledge serves as a substitute for disclosure. This case does not raise the question of whether a spouse may waive disclosure and we do not decide that issue.

The public interest requires that a financial agreement between spouses or prospective spouses be executed under conditions of candor and fairness. Married persons and persons about to marry stand in a confidential relationship and must deal fairly with each other. Fair and reasonable disclosure of financial status is a significant aspect of the duty of fair dealing.

■ An agreement is also inequitable if it is not entered into voluntarily and freely. In determining whether the agreement was entered into voluntarily and freely, the relevant inquiry is whether each spouse had a meaningful choice. Some factors a circuit court should consider are whether each party was represented by independent counsel, whether each party

had adequate time to review the agreement, whether the parties understood the terms of the agreement and their effect, and whether the parties understood their financial rights in the absence of an agreement. If the agreement was not entered into voluntarily and freely, the agreement is inequitable under sec. 767.255(11).

The first two requirements are issues of "procedural fairness." The third requirement is an issue of "substantive fairness." Substantive fairness is an amorphous concept. We can set forth general principles, but the courts must determine substantive fairness on a case by case basis. In determining substantive fairness a court must be mindful of the two principal legislative concerns reflected in sec. 767.255(11)—the protection of the parties' freedom to contract and the protection of the parties' financial interests at divorce. Section 767.255(11) allows parties freedom to contract but does not allow them to ignore the state's interest in protecting the financial interests of the parties at divorce.

An agreement need not approximate a division a circuit court might make under sec. 767.255 to meet the requirement of substantive fairness. If the parties are permitted to do only that which a circuit court would do under sec. 767.255, the parties would not have a meaningful right to contract or to divide their property as they wish. A party should be able to enter into an agreement, for example, which preserves property acquired before marriage for persons other than the spouse. To meet the requirement of substantive fairness an agreement need not divide the property in conformity with how a divorce court would divide the property, but it should in some manner appropriate to the circumstances of the parties take into account that

each spouse contributes to the prosperity of the marriage by his or her efforts.

In framing the agreement the parties should consider the circumstances existing at the execution of the agreement and those reasonably foreseeable. The parties should consider that the duration of the marriage is unknown and that they wish the agreement to govern their financial arrangements whether the marriage lasts a short time or for many years. The parties should consider such factors as the objectives of the parties in executing an agreement, the economic circumstances of the parties, the property brought to the marriage by each party, each spouse's family relationships and obligations to persons other than to the spouse, the earning capacity of each person, the anticipated contribution by one party to the education, training or increased earning power of the other, the future needs of the respective spouses, the age and physical and emotional health of the parties, and the expected contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

█

In assessing the fairness of the substantive terms of the agreement, a circuit court considers these factors and evaluates the terms of the agreement from the perspective of the parties at the execution of the agreement. We conclude that the court should look at the substantive fairness of the agreement as of the time it was made if the court is to give effect to the parties' freedom to contract. At execution the parties know their property and other relevant circumstances and are able to make reasonable predictions about the fu-

ture; they should then be able to draft a fair agreement considering these factors.[3]

Clearly an agreement fair at execution is not unfair at divorce just because the application of the agreement at divorce results in a property division which is not equal between the parties or which a court might not order under sec. 767.255. If, however, there are significantly changed circumstances after the execution of an agreement and the agreement as applied at divorce no longer comports with the reasonable expecta-

---

[3] Section 767.255(11) does not specify the time at which the inequitable nature of the terms of the agreement is to be gauged. In its certification, the court of appeals points out that the use of the present tense in sec. 767.255(11), that is, that "no agreement shall be binding where the terms of the agreement *are* inequitable," might be read to mean that the assessment of whether the terms of the agreement are inequitable is made as of the time of the divorce, not as of the date the agreement was executed.

By contrast, others have read sec. 767.255(11) to mean that the assessment of the validity of the agreement is to be made as of the date the agreement was executed. Thus in *Hengel v. Hengel,* 122 Wis. 2d 737, 745, 365 N.W.2d 16 (Ct. App. 1985), the parties interpreted the statute to require the validity of the agreement to be determined as of the time of execution. The court of appeals conducted its analysis of the agreement in that case as of the time of execution without exploring or ruling on the correctness of the parties' position.

For comments by Wisconsin attorneys regarding the determination of the inequitableness of an agreement under sec. 767.255(11), *see* Loeb, *Prenuptial and Postnuptial Agreements,* 54 Wis. Bar Bull. 13 (March 1981); Podell, *The Uniform Marital Property Act: New Concepts for Divorce Lawyers,* 12 The Family Law Reporter 3001, 3007 (1985); Roberson and Langer, *Marital Agreements: An Important Financial Planning Tool,* 57 Wis. Bar Bull. 29, 30 (July 1984).

tions of the parties, an agreement which is fair at execution may be unfair to the parties at divorce.

Using this approach to assess substantive fairness, a circuit court would look at the fairness of the substantive terms of the agreement as of the execution of the agreement and, if there have been significantly changed circumstances after the execution of the agreement, at divorce. This approach protects the parties' freedom to contract and the parties' financial interests at divorce.

To summarize, an agreement is inequitable under sec. 767.255(11) if it fails to satisfy any one of the three requirements: each spouse has made fair and reasonable disclosure to the other about his or her financial status; each spouse enters into the agreement voluntarily and freely; the substantive terms of the agreement dividing the property upon divorce are fair to each spouse.

■

The circuit court's determination of inequitableness under sec. 767.255(11), as does the circuit court's determination of a property division under sec. 767.255, requires the circuit court to exercise its discretion. A discretionary determination must be made on the basis of the facts and the applicable law. A discretionary determination must be the product of a rational mental process by which the facts of record and the law relied upon are stated and considered together for the purpose of achieving a reasoned and reasonable determination. The decision will be upheld by an appellate court if the circuit court considered the relevant law and facts and set forth a process of logical reasoning.

Because the circuit court has not considered this agreement in this case under the three-part test we have set forth, we remand the cause to the circuit court to exercise its discretion under the test set forth herein.

Accordingly, we reverse the judgment dividing the property on the basis of the agreement and remand the cause for further proceedings not inconsistent with this decision. In reaching its decision the circuit court should consider the entire record in this matter and may reopen the proceedings for further testimony or briefing if it so elects.

*By the Court.*—The judgment is reversed and the cause is remanded to the circuit court.