## Marlene SCHUMACHER, Petitioner-Respondent,

v.

## Vernon A. SCHUMACHER, Appellant-Petitioner.

Supreme Court

*No. 84–2170. Argued April 29, 1986.—Decided June 20, 1986.*

(Also reported in 388 N.W.2d 912.)

For the appellant-petitioner there were briefs by *Richard L. Everson*, Milwaukee, and *John M. Baker*, of counsel, Milwaukee, and oral argument by *Mr. Everson* and *Mr. Baker*.

For the petitioner-respondent there was a brief by *Robert L. Jackson, Jr.*, Milwaukee, and *Clare L. Fiorenza* and *Fiorenza & Hodan, S.C.*, Milwaukee, and oral argument by *Clare L. Fiorenza*.

BABLITCH, J.   Vernon A. Schumacher (Vernon) contends that the circuit court abused its discretion by setting aside an antenuptial agreement which he and Marlene C. Schumacher (Marlene) had executed, when the court divided the couple's property at divorce, pursuant to sec. 767.255, Stats. Because we conclude that the Schumacher's agreement was inequitable inas-

much as the parties did not disclose their assets fairly and reasonably to one another prior to executing the agreement, we hold that the circuit court did not abuse its discretion in this case.

On July 16, 1977, Marlene Lamb, age 31, and Vernon Schumacher, age 53, entered into an antenuptial agreement which an attorney had drafted at Vernon's request. The next day they married. The marriage was the second marriage for both; Marlene's first marriage had ended in divorce and Vernon had been widowed previously. Neither had children and no children were born of this marriage.

The antenuptial agreement, which the parties signed and two persons witnessed, was one page in length. It provided, in relevant part:

"WHEREAS, an agreement to marry is about to be entered into between the parties hereto; and

"WHEREAS, the parties hereto desire to settle the property rights to the following property presently owned by the husband:

"1. The Holiday Park apartments . . . in which the husband has an equity of approximately $600,000.00.

"2. A second mortgage on the Howard Avenue apartments . . . in the amount of approximately $40,000.00. . . .

"3. Various stocks . . . valued at approximately $20,000.00 (Sic)

"WHEREAS, the wife desires to waive and relinquish all her rights to said property or any proceeds from the sale thereof, or any property traded for same;

"NOW THEREFORE, in consideration of said proposed marriage, wife agrees that she will not claim any right, title, or interest in said property.

"All other property now or hereafter owned by either of said parties shall not be affected by this Agreement."

During the marriage Vernon sold the Holiday Park apartments for $2,000,000 on a land contract which provided payments to him through a trust. Between 1977 and 1984 his equity in the apartments appreciated by $180,000.

On April 30, 1984, the circuit court of Milwaukee county granted the Schumachers a divorce, after a hearing on issues of property division. A key dispute at the hearing was the division of the increase in the value of Vernon's equity in the Holiday Parks apartments. Vernon argued that the couple's antenuptial agreement prevented the court from including that increase as an asset in the marital estate and dividing it between him and Marlene, pursuant to sec. 767.255, Stats., set forth below.[1] Marlene argued that the agree-

---

[1] Section 767.255, Stats., provides, in relevant part:

"Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(h), the court shall divide the property of the parties and divest and transfer the title of any such property accordingly. . . . Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage, and in that event the court may divest the party of such property in a fair and equitable manner. The court shall presume that all other property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:
". . . .

ment was inequitable and therefore unenforceable under sec. 767.255(11).

The circuit court ruled that the antenuptial agreement was inequitable at its execution. It stated in relevant part:

> "Assuming both parties voluntarily executed the agreement, it may be unenforceable if one party was not fully informed of the other's financial situation and if the following conditions exist: That the party did not in writing waive the right to such information before signing the agreement; that the party did not have or reasonably could not have had independent knowledge of the other's finances; and the agreement was unconscionable when it was executed.
> "  . . . .
> "While I do believe that the parties, upon entering into—voluntarily entering into it, I don't believe, in looking at the factors that go into determining the fairness, that there has been a full coverage of all those factors.
> "Number one, neither Mr. or Mrs. Schumacher were—exchanged asset lists; and while Dr. Schumacher has stated that she was made aware during the course of the marriage or prior to that time of the assets that she was giving up, this court is not satisfied that Mrs. Schumacher, at the time she entered into this agreement, had a complete and total picture of Dr. Schumacher's finances and, likewise, did he of her."

---

"(11)   Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties."

The court did not enforce the agreement and divided the increase in the value of Vernon's equity in the apartments between the parties.

Vernon Schumacher appealed from the judgment of the circuit court to the court of appeals, which summarily affirmed the judgment in an unpublished decision. Vernon then sought review by this court.

He contends that the circuit court abused its discretion in two respects. First, he maintains that the court applied inappropriate and inapplicable law. According to Vernon, the court could not rely on the parties' failure to disclose their assets completely to one another in finding the agreement inequitable. He argues that complete disclosure of assets is not a requirement for a valid antenuptial agreement, but that a party's general and approximate knowledge of the other party's property is sufficient. Second, Vernon argues that the court's ruling was not supported by the facts.

■■■

The sole issue for review is whether the circuit court abused its discretion in setting aside the Schumachers' antenuptial agreement and dividing the couple's marital estate, pursuant to sec. 767.255, Stats. The division of the marital estate upon divorce is within the sound discretion of the trial court. *Bonnell v. Bonnell,* 117 Wis. 2d 241, 248, 344 N.W.2d 123 (1984). We will sustain a discretionary act of the circuit court if the court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. (Citation omitted.) *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982).

In *In re the Marriage of: Florence S. Button v. Charles H. Button,* 131 Wis 2d 84, 388 N.W.2d 546 (1986), we set forth the standard for determining inequitableness of marital property agreements at divorce. *Id.,* pages 94–95. Under this standard an agreement is inequitable under sec. 767.255(11), Stats., if it fails to satisfy any one of three requirements: "... each spouse has made fair and reasonable disclosure to the other about his or her financial status; each spouse enters into the agreement voluntarily and freely; [and] the substantive terms of the agreement dividing the property upon divorce are fair to each spouse." *Id.,* page 99. We establish this standard in recognition of the legislature's policy of allowing "... parties to structure their financial affairs to suit their needs and values and to achieve certainty." *Id.,* page 94.

To satisfy the first requirement of *Button,* parties must make fair and reasonable disclosure about their financial status. 131 Wis. 2d at 99. They must enter into agreements having "known the facts." *Id.,* page 95. When parties do not fairly and reasonably disclose their actual assets to one another, independent knowledge of one another's financial status may substitute for fair and reasonable disclosure. *Id.,* page 95. However, independent knowledge is not a general or imputed knowledge of the other's assets and their value. At the same time, the requirement for fair and reasonable disclosure or independent knowledge is not so technical that *de minimis* failures to disclose will invalidate an agreement.

In this case the record shows that the court considered a wide range of factors relating to the execution of the Schumachers' agreement and that the testimony

of the parties addressed these factors. We focus on the evidence related to the question whether the parties fairly and reasonably disclosed their assets to one another because we conclude that disclosure is the determinative issue in this case.

At the hearing, when asked whether he had disclosed his assets to Marlene prior to July 16, 1977, Vernon stated that Marlene had "always been around" when he worked on his books. In addition to the assets listed in the agreement, Vernon testified that he had a public employee pension plan worth approximately $34,000, a bank account of $3,000 to $13,000 and furniture worth about $3,500 at the time of the marriage. In oral argument Vernon stated that he also had an annuity worth approximately $31,000–$34,000 at that time.

At the hearing Marlene testified that she did not know what assets Vernon held in July of 1977, because he did not give her a list of his assets or any other documentation. According to Marlene, Vernon did not mention his state employee's pension plan. She testified that she knew that Vernon had a checking and saving account, but that she had never seen his bank books. She also stated that she discussed the agreement with a friend who was an attorney before she signed it, but that she did not show the attorney any supporting documents.

Marlene further testified that she owned a car worth $3,500–4,000, a savings account of $9,000 or $10,000, a piano and an organ of an unspecified value, household furnishings of unspecified value and an employee pension plan, also of unspecified value, at the time of the marriage. She stated that Vernon had not asked about her assets, except in regard to her ability

to pay $8,000 on the down payment for their house. In response to his questioning, she told him about her savings account.

The circuit court found that the Schumachers did not exchange lists of their assets and that neither had a "complete and total picture" of the other's finances. We must affirm these factual findings unless they are clearly erroneous. Section 805.17(2), Stats. From this record we conclude that the circuit court's findings are not clearly erroneous and that the Schumacher's agreement is, as a matter of law, inequitable within the meaning of sec. 767.255(11) because the parties did not fairly and reasonably disclose their assets nor did they have independent knowledge of one another's financial status.

The parties agree that they did not exchange specific information on existing assets or the value of these assets prior to executing their antenuptial agreement. While, as Vernon argues, Marlene might have assumed that he had an employee's pension plan, given that she was similarly employed, such general knowledge does not satisfy the *Button* requirement for independent knowledge. As the facts of this case demonstrate, if one party surmises that the other has a pension, that conjecture is not the equivalent of knowing that the other party has both a pension and an annuity plan with a total value in excess of $60,000. Only actual knowledge of these facts, which was not demonstrated, satisfies the disclosure requirement of *Button*.

Accordingly, we hold that the circuit court did not abuse its discretion by setting aside the Schumacher's antenuptial agreement and dividing their property according to the factors set forth in sec. 767.255, Stats.

We do not separately discuss Vernon's argument that the circuit court's ruling was not supported by the facts because he does not allege any factual errors relating to Marlene's independent knowledge of his assets.

*By the Court.*—Decision of the court of appeals is affirmed.