IN RE the MARRIAGE OF: Josephine Marie
GREENWALD, Petitioner-Respondent-Cross
Appellant,†

v.

Darwin P. GREENWALD, Respondent-Appellant-
Cross Respondent.

Court of Appeals

*No. 89-0406. Submitted on briefs October 4, 1989.—Decided
February 21, 1990.*

(Also reported in 454 N.W.2d 34.)

†Petition to review dismissed.

769

On behalf of the respondent-appellant cross respondent, the cause was submitted on the briefs of *Elizabeth Adelman* of *Adelman & Adelman* of Milwaukee.

On behalf of the petitioner-respondent cross appellant, the cause was submitted on the briefs of *Patrick J. Hudec* of *Hudec Law Offices.*

Before Brown, P.J., Scott and Nettesheim, JJ.

NETTESHEIM, J. Darwin Greenwald appeals and Josephine Greenwald cross-appeals from a divorce judgment which reformed a premarital property division agreement between the parties. The trial court determined that although the agreement met the procedural fairness requirements of *Button v. Button,* 131 Wis. 2d 84, 388 N.W.2d 546 (1986), it did not satisfy the substantive fairness requirements of *Button.* Based upon this determination, the court reformed the agreement. The court also denied maintenance to Josephine[1] and required Darwin to pay fifty percent of Josephine's attorney's fees.

Darwin appeals, arguing that the trial court should have enforced the marital agreement because the agree-

---

[1] Instead, the trial court held the maintenance matter open.

ment is substantively fair and premarital agreements are not subject to reformation. Darwin also appeals the attorney's fees contribution order, contending that it is excessive.

Josephine cross-appeals, arguing that the court should have rejected the marital agreement entirely because the agreement is procedurally unfair. She also contends that she is entitled to maintenance and that the trial court should have considered the parties' premarital relationship in the property division and maintenance determinations. In addition, she argues that the court failed to properly consider certain tax consequences of the property division. Finally, she contends that the attorney's fees contribution order is inadequate.

We conclude that the premarital agreement satisfies the equitable requirements of *Button* both in its procurement and in its substantive provisions. Therefore, we reverse the property division provision of the judgment and remand for a new property division in accordance with the marital agreement. We affirm the trial court's refusal to consider the parties' premarital relationship when deciding the property division and maintenance issues.

Because the agreement is equitable we need not decide Darwin's contention that inequitable premarital agreements are not subject to reformation. Since the new property division will bear upon maintenance, we do not address Josephine's cross-appeal complaint that the court should have awarded her maintenance. The new property division also renders moot Josephine's cross-appeal complaint that the court did not properly consider certain tax consequences of the existing property division. Finally, we reject Darwin's challenge on appeal as to the trial court's attorney's fees award. We do agree, however, with Josephine on her cross-appeal that the

court's reasoning in support of the attorney's fees award is inadequate. We therefore also reverse and remand the attorney's fees matter.

## I. FACTS

Many of the facts are sharply disputed by the parties' differing testimony. Those we recite here essentially track the trial court's decision.

In 1973, Darwin, a retired widower in his early 70's, placed an ad in a local newspaper seeking a housekeeper. Josephine, twice divorced and in her late 50's, responded. She accepted the housekeeping job on a part-time basis, continued her full-time employment at Southern Colony and moved into Darwin's home. She served in this capacity for ten years, receiving free room and board but no salary. In 1981, Josephine retired from Southern Colony.

Josephine testified that this living and employment arrangement soon developed into a full marriage-like relationship. Darwin acknowledged the parties' close relationship but denied any sexual intimacies.[2]

While living together under this arrangement, Josephine oftentimes proposed marriage. Darwin repeatedly declined these offers because of his age and his wish to preserve his estate for his children from his prior marriage.

Eventually, however, Darwin softened his stance, stating that he would consider marriage but only "under a marriage agreement." To this end, Darwin presented his handwritten version of a proposed marital agreement to Josephine. He also delivered a copy of this proposal to his attorney, William Kingston, in February 1983. Attor-

---

[2]The trial court did not resolve this particular factual dispute.

ney Kingston then drafted a typewritten version of the proposed agreement and delivered it to Darwin. On March 4, 1983, Darwin received the typewritten agreement from Attorney Kingston and presented it to Josephine.

Among other items, the agreement provided that: (1) it was made in contemplation of marriage; (2) both parties had separate estates and separate lineal heirs for whom the parties wished to provide; (3) all property owned by each party would remain titled in such party; (4) in the event of a divorce the agreement would govern the property division and neither party would claim an interest in the property owned by the other; and (5) in the event of death, the survivor would not elect against the deceased's will. In addition, the agreement provided for an annual equal sharing between Darwin and Josephine of all net income earned by both.

The agreement also provided that it "[s]hall continue in effect until 25 years from the date hereof. Thereafter, this Agreement shall automatically terminate. It is contemplated that the Parties will negotiate a new Agreement at that time."

The parties met at Attorney Kingston's office on March 8, 1983. Attorney Kingston advised Josephine that she was entitled to a list of Darwin's separate assets and that she was entitled to consult with separate counsel. She declined both offers. After Attorney Kingston reviewed and explained the document to the parties, they signed it. Eleven days later, the parties married. Josephine was then sixty-seven years old; Darwin was eighty-one. At this time, Darwin owned property, primarily real estate, worth in excess of $670,000. Josephine owned an automobile and a minimal amount of savings and personal property.

Less than three years later, Josephine filed this action for divorce. Prior thereto, Darwin had paid Josephine $26,232.30 pursuant to the income sharing provisions of the agreement. Josephine asked the trial court to invalidate the premarital agreement, asserting that she did not enter into the agreement freely and voluntarily, that Darwin had failed to make a fair and reasonable financial disclosure prior to the agreement, and that the agreement was inherently inequitable. Darwin defended the agreement and asked the trial court to enforce it.

The trial court ruled that while the agreement had been fairly procured under *Button,* it did not satisfy the substantive fairness test of *Button.* However, the court did not then fashion a conventional property division under sec. 767.255, Stats., separate from the agreement. Instead, the trial court, "taking a leaf from American pension law," reformed the agreement by "vesting" ten percent of Darwin's assets in Josephine for each year of marriage. The court then awarded each party one-half of the "vested" property resulting from this vesting scheme. The net settlement due Josephine from Darwin under this plan is $89,115.38. The balance of the "non-vested" property is preserved to Darwin under the agreement as reformed.

In addition, the trial court ordered Darwin to pay Josephine an additional $26,744.32 under the agreement's income sharing provisions for the years while the action was pending. This brought Josephine's total payment under this provision of the agreement to $52,976.62.

The trial court denied Josephine maintenance and ordered Darwin to pay one-half of Josephine's attorney's fees. Darwin appeals and Josephine cross-appeals. We

will recite additional facts as discussion of the issues requires.

## II. PREMARITAL AGREEMENT/PROPERTY DIVISION

We begin with the statute and the landmark case in Wisconsin concerning marital agreements—*Button v. Button*, 131 Wis. 2d 84, 388 N.W.2d 546 (1986).

Section 767.255, Stats., provides, *inter alia*, as follows:

> Upon every judgment of annulment, divorce or legal separation . . . the court shall divide the property of the parties and divest and transfer the title of any such property accordingly . . .. Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance . . . shall remain the property of such party . . .. The court shall presume that all other property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:
>
> **(11)** *Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.* [Emphasis added.]

██

*Button* holds that an agreement is inequitable if it fails to satisfy any one of the following requirements: each spouse has made fair and reasonable disclosure to the other of his or her financial status; each spouse has entered into the agreement voluntarily and freely; and

the substantive provisions of the agreement dividing the property upon divorce are fair to each spouse. *Button,* 131 Wis. 2d at 89, 388 N.W.2d at 548. The first two of these requirements relate to the procurement of the agreement; the latter relates to the substance of the agreement. *Id.* at 94–95, 388 N.W.2d at 550.

An equitableness determination requires an exercise of the trial court's discretion. *Id.* at 99, 388 N.W.2d at 552. On review, we will not reverse the trial court's determination absent an abuse of discretion. *See id.* We will uphold the decision if the trial court considered the relevant law and facts and set forth a process of logical reasoning. *Id.*

### A. Procedural Fairness

We turn first to Josephine's cross-appeal challenging the trial court's determination that the agreement met the *Button* requirements of procedural fairness. Josephine argues that the agreement was unfairly procured and therefore the trial court should have divided Darwin's property (and hers) pursuant to the property division statute, sec. 767.255, Stats., without consideration of the marital agreement.

Procedural fairness is satisfied if the agreement was fairly procured. *Button,* 131 Wis. 2d at 95–96, 388 N.W.2d at 550–51. This depends upon whether at the time the agreement was executed each spouse made fair and reasonable financial disclosure to the other spouse and whether each spouse entered into the agreement freely and voluntarily. *Id.* at 95, 388 N.W.2d at 550. These two factors are examined as of the date the agreement is executed. *Id.*

Josephine complains that Darwin did not make a fair and reasonable disclosure of his financial status. In support she points to the absence of a formal exchange of financial records, and her claimed ignorance of Darwin's true worth. The trial court, however, determined that Josephine knew of Darwin's considerable assets.

The evidence supports this determination. Prior to and during the marriage, Josephine assisted Darwin in keeping his financial records. She made entries in Darwin's income and ledger books, including mortgage, rental and interest income payments received by Darwin. This process required Josephine to refer to the mortgage amortization schedules and bank statements reflecting Darwin's holdings. Josephine and Darwin discussed the value of certain of Darwin's duplexes when Darwin objected to tax assessments on the properties. When Josephine signed the agreement on March 8, 1983, Attorney Kingston told her that she was entitled to a list of Darwin's assets. Josephine responded that the list was not necessary because she already knew about Darwin's property from her work on his books.

Josephine's testimony is to the contrary on many of these points. This, however, goes to the credibility of the witnesses and we are required to give due regard to the opportunity of a trial court to judge such a matter. Sec. 805.17(2), Stats.; *Hughes v. Hughes,* 148 Wis. 2d 167, 171, 434 N.W.2d 813, 815 (Ct. App. 1988). The evidence supports the trial court's determination that Josephine was fairly and reasonably apprised of Darwin's assets.

Moreover, a separate ground exists for affirming the trial court's determination even if a full and reasonable disclosure had not been made. The trial court determined that Josephine "was set on marrying Darwin and that this headstrong belief would hardly be deterred by

the revelation of *more* assets." (Emphasis in original.) The trial court also noted that "Josephine desperately wanted to marry." These findings are not clearly erroneous. Sec. 805.17(2), Stats.

The trial court, in effect, determined that Josephine wanted a marriage to Darwin regardless of any agreement or its terms. The purpose of a fair and reasonable disclosure is to guard against the possibility that "[a] party might not have entered into the agreement had she or he known the facts." *Button,* 131 Wis. 2d at 95, 388 N.W.2d at 550. If a party's conduct demonstrates that specific knowledge of the other's property and finances is not important to the marital decision, and if the agreement is otherwise freely and voluntarily made, we see no sound reason why the law should later intervene and undo the parties' contract. The trial court's finding reveals that such was the case here.

Josephine, however, contends that her execution of the agreement was not free and voluntary. This requires the court to determine whether each spouse has a "meaningful choice." *Id.* at 95, 388 N.W.2d at 550-51. Factors bearing upon this question include whether each party was represented by independent counsel, whether each party had adequate time to review the agreement, whether the parties understood the terms of the agreement and their effect, and whether the parties understood their financial rights in the absence of an agreement. *Id.* at 95-96, 388 N.W.2d at 550-51.

The parties were not represented by separate counsel in this pre-*Button* situation. However, Attorney Kingston did advise Josephine of her right to separate counsel—an overture she declined. In addition, Attorney

Kingston conducted a thorough reading and explanation of the proposed agreement with Josephine before she signed it. Josephine also had received Darwin's handwritten copy and Attorney Kingston's typewritten copy of the proposed agreement prior to the execution of the agreement. Most importantly, Josephine admitted that she knew the contents and thrust of the agreement when she signed it, but silently hoped that Darwin would "overlook" it.

We also note that Josephine had pursued marriage proposals with Darwin for years prior with no success because Darwin wanted to preserve his estate for his children. When Darwin finally began to relent, he made it clear that any marriage would be linked to an agreement which preserved his estate for his children. In light of all the evidence on this question and, in particular, Josephine's pursuit of Darwin in the face of his refusals and conditions, Josephine's claim that she had no "meaningful choice" under *Button* rings hollow.

Again we note Josephine's testimony which disputes certain of this evidence. But again we must give due deference to the credibility determinations made by the trial court. Sec. 805.17(2), Stats.; *Hughes,* 148 Wis. 2d at 171, 434 N.W.2d at 815. The evidence well supports the trial court's determination that Josephine's agreement to the contract was freely and voluntarily given.

### B. Substantive Fairness

We now address Darwin's claim on appeal that the trial court erred in its determination that the agreement did not satisfy the substantive fairness requirements of *Button.* Substantive fairness is an amorphous concept which must be determined on a case-by-case basis. *But-*

*ton,* 131 Wis. 2d at 96, 388 N.W.2d at 551. In determining substantive fairness, a court must be mindful of the two principal legislative concerns reflected in sec. 767.255(11), Stats.: the protection of the parties' freedom to contract and the protection of the parties' financial interests at divorce. *Button,* 131 Wis. 2d at 96, 388 N.W.2d at 551.

In support of its determination that the agreement was substantively unfair the trial court noted the unequal bargaining position of the parties and the agreement's twenty-five year duration which effectively precluded Josephine from ever sharing in Darwin's estate. Although the trial court did not so indicate, we construe these observations as determinations, respectively, that the agreement was substantively unfair at the time of its making and at the time of the divorce. *See id.* at 89, 388 N.W.2d at 548. We conclude that these reasons are not supported by the relevant law or facts on this question. Therefore, we reverse the court's discretionary determination of substantive unfairness.

■■■■■■

We start with the statutory presumption that marital agreements are equitable. Sec. 767.255(11), Stats. This reflects the legislature's interest in giving effect to such agreements to the extent possible. *Button,* 131 Wis. 2d at 93-94, 388 N.W.2d at 550. Thus, the burden of persuasion and production of evidence is on the party challenging the agreement. *Id.* Here that party is Josephine. Whether a party has met a burden of proof presents a question of law. *See Brandt v. Brandt,* 145 Wis. 2d 394, 409, 427 N.W.2d 126, 131 (Ct. App. 1988).

■■■■

The *Button* court observes that marital agreements governing the division of property in the event of divorce serve a useful function by allowing the parties to struc-

ture their financial affairs to suit their needs and values and to achieve certainty. *Button,* 131 Wis. 2d at 94, 388 N.W.2d at 550. The right to enter into an agreement regulating financial affairs in a marriage is important to a large number of citizens. *Id.* At the same time we recognize that marriage is not simply a contract between two parties. *Id.* Marriage is a legal status in which the state has a special interest in protecting a spouse's financial interests upon divorce. *Id.*

With these competing principles in mind, we turn first to the trial court's determination that the parties bargained from an unequal position—a determination which we construe to mean that the agreement was substantively unfair at the time of its execution. *Button* recites numerous factors which the parties should consider when making their agreement. These include the objectives of the parties in executing the agreement, the economic circumstances of the parties, the property brought to the marriage by each party, each spouse's family relationships and obligations to persons other than the spouse, the earning capacity of each person, the anticipated contribution by one party to the education, training or increased earning power of the other, the future needs of the respective spouses, the age and physical and emotional health of the parties, and the expected contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services. *Id.* at 97, 388 N.W.2d at 551.

Some of the above factors support enforcement of the agreement; others support non-enforcement. Rarely, we suspect, will application of these factors lead to a clearly indicated resolution. *Button,* however, also

instructs that the trial court should consider these factors and evaluate the terms of the agreement *from the perspective of the parties at the execution of the agreement with a view to giving effect to the parties' freedom to contract. See id.* While the trial court recognized this principle, we conclude that the court failed to meaningfully apply it in this case.

■■■

Other than the observation that Josephine wanted to marry and Darwin did not, the trial court did not further elaborate as to why the parties' bargaining positions were unequal. We assume the trial court meant that Josephine therefore had to accept marriage upon Darwin's terms. But this is not unusual in a prospective marriage situation where one party holds substantial property intended for his or her heirs and the other does not. This fact, *standing alone,* should not deprive the parties of the ability to negotiate an enforceable marital agreement which preserves the estate of the more propertied party to his or her heirs. To hold that such a situation renders a marital agreement unenforceable would unreasonably impede the abilities and rights of parties to both contract and marry.

Instead, this disparate propertied status is but one of the many factors which the court should consider as to whether the agreement is substantively unfair at the time of execution. The court should then determine if, in light of all these factors, it is appropriate "to give effect to the parties' freedom to contract." *Id.*

Other than the perceived unequal bargaining positions of the parties, the trial court cited no other reasons as to why the agreement was substantively unfair at its execution. While the trial court properly considered this factor, the court erred in making it the only, and controlling, consideration. As noted, certain of the *Button* fac-

tors can be argued to support the agreement; others against it. However, viewed from the parties' perspective at the time of execution and giving due consideration to their objectives and freedom to contract, we see no reason why this agreement was substantively unfair at the time of its execution. We conclude that Josephine failed in her burden to demonstrate this condition and that the trial court's determination to the contrary represents an incorrect consideration of the relevant facts and law.

In further support of its conclusion that the agreement was substantively unfair at the time of the divorce, the court noted that the agreement's twenty-five year duration effectively precluded Josephine from becoming a "full economic equal in the marriage." This reasoning, however, overlooks that this is precisely what the parties intended.

An agreement is not unfair at divorce just because the application of the agreement results in a property division which is not equal between the parties or which a court might not order under sec. 767.255, Stats. *Button*, 131 Wis. 2d at 98, 388 N.W.2d at 552. If, however, there are significantly changed circumstances after the execution of an agreement and the agreement as applied at divorce no longer comports with the reasonable expectations of the parties, an agreement which is fair at execution may be unfair to the parties at divorce. *Id.* at 98–99, 388 N.W.2d at 552.

The courts are instructed to enforce marital agreements if the circumstances at the time the marriage ends were what the parties foresaw at the time they entered into the agreement. *Warren v. Warren,* 147 Wis. 2d 704, 709, 433 N.W.2d 295, 297 (Ct. App. 1988). Here, less than three years elapsed between the marriage and the

divorce. Our review of the record reveals no significant change in the parties' circumstances during this time. The trial court's decision is not premised upon any such significant change in circumstances. Absent such a condition, a determination of substantive unfairness is not warranted. *Button,* 131 Wis. 2d at 98–99, 388 N.W.2d at 552.

Because the trial court's determination of substantive unfairness is premised in part upon an incorrect consideration of the relevant facts and law, we are compelled to reverse the property division provisions of the judgment. We remand with instructions to divide the parties' property in accord with the marital agreement. In light of this holding, we are not required to address Darwin's further claim that marital agreements are not subject to reformation. Nor need we address Josephine's further claim on cross-appeal that the trial court failed to properly assess certain capital gains tax consequences resulting from the property division.

## III. MAINTENANCE

Josephine also cross-appeals the trial court's denial of maintenance. The trial court concluded that the property division under the reformed marital agreement provided Josephine with interest income sufficient to meet her needs. Since we have reversed the property division and remanded for a new property division pursuant to the agreement, the premise for the court's denial of maintenance is no longer valid. Consequently, the issue of maintenance must be reconsidered by the trial court on remand. *See* sec. 767.26(3), Stats. Our opinion on the merits of Josephine's challenge to the maintenance order would have no practical effect on the existing contro-

versy; the issue is moot and we decline to address it. *See
City of Racine v. J-T Enters. of Am. Inc.,* 64 Wis. 2d
691, 700, 221 N.W.2d 869, 874 (1974).

## IV. PREMARITAL RELATIONSHIP

Josephine argues on cross-appeal that the contribu-
tions she made to the marital estate during her ten-year
premarital tenure as Darwin's housekeeper should have
been considered by the trial court in its property division
and maintenance determinations. Josephine contends
that the "catchall" provisions of sec. 767.26(10), Stats.,
pertaining to maintenance, and sec. 767.255(12), Stats.,
pertaining to property division, permit this considera-
tion. Relying on *Watts v. Watts,* 137 Wis. 2d 506, 405
N.W.2d 303 (1987), the trial court refused to consider
Josephine's premarital contributions in support of her
and maintenance and property division claims. We
affirm the court's ruling.

In *Watts,* our supreme court rejected a claim that
sec. 767.255, Stats., governs property division disputes
between unmarried cohabitants:

> On the basis of our analysis of sec. 767.255 and the
> Family Code which revealed no clear evidence that
> the legislature intended sec. 767.255 to apply to
> unmarried persons, we decline the invitation to
> extend the application of sec. 767.255 to unmarried
> cohabitants. We therefore hold that the plaintiff has
> not stated a claim for property division under sec.
> 767.255.

*Watts,* 137 Wis. 2d at 519-20, 405 N.W.2d at 309. *Watts*
squarely controls the property division aspect of this
issue. We affirm the trial court's ruling.

Although *Watts* did not present a maintenance claim, we are persuaded that *Watts* also requires us to reject Josephine's claim that her premarital contribution to Darwin's estate is a relevant factor on her maintenance claim. After examining the Family Code's legislative history in *Watts,* the supreme court concluded that the code did not govern property divisions between unmarried cohabitants. We conclude that this same reasoning applies with equal force to Josephine's maintenance claim. *See id.* at 519, 405 N.W.2d at 309.

Nor are we persuaded that the parties' later marriage requires a different result. The matter at issue concerns Josephine's *premarital* contributions to Darwin's property—the very situation addressed in *Watts.*[3]

## V. ATTORNEY'S FEES

Darwin appeals and Josephine cross-appeals from the attorney's fees provision of the divorce judgment which ordered Darwin to pay one-half of Josephine's $20,031.35 attorney's fees obligation. Darwin contends that the ordered contribution is too large; Josephine claims that it is too small. We reject Darwin's challenges. However, we conclude that the trial court's reasoning fails to address the question of Josephine's need. Based upon this and that the new property division may bear upon the matter of attorney's fees, we reverse the order and remand for a new determination of this issue.

---

[3] *Watts v. Watts,* 137 Wis. 2d 506, 405 N.W.2d 303 (1987), although rejecting the cohabitant's claim under sec. 767.255, Stats., did hold that other types of well-recognized contractual and property claims were stated. *Watts,* 137 Wis. 2d at 511, 405 N.W.2d at 305-06.

Darwin does not quarrel with the reasonableness of the fee. Rather, he rests his argument on the claim that Josephine's legal position on a number of the issues was without merit. Absent a claim for frivolous action, *see* sec. 814.025, Stats., or "overtrial," *see Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 483–84, 377 N.W.2d 190, 196 (Ct. App. 1985), the law does not permit the award or denial of attorney's fees based upon who wins or loses. We reject the premise of Darwin's challenge.

On her cross-appeal, Josephine complains that the trial court's findings are inadequate. She contends that the record demonstrates her need for additional contribution from Darwin. The reasons given by the trial court in support of its order are limited to the following: "To order Darwin to pay the balance due would be harsh and unfair. To order a 50 percent contribution would be fair considering he enjoys the income of the parties' estate."

We have no quarrel with this reasoning as far as it goes. The problem is that it does not go far enough. The trial court before awarding attorney's fees must make findings of the need of the spouse seeking contribution, the ability *to* pay of the spouse ordered to pay, and the reasonableness of the total fees. *Kastelic v. Kastelic,* 119 Wis. 2d 280, 290, 350 N.W.2d 714, 719 (Ct. App. 1984).

Here, the trial court's reasoning fails to even address Josephine's need for contribution. While the award *sub silentio* infers that the trial court believed Josephine required financial assistance to pay her attorney fees, the record is silent as to how a fifty percent contribution accommodates Josephine's needs. A failure to exercise discretion can constitute an abuse of discretion. *See*

*McCleary v. State,* 49 Wis. 2d 263, 277-78, 182 N.W.2d 512, 520 (1971).

On occasion, we will independently search the record to seek evidence and reasons which support the trial court's ultimate discretionary ruling. *See Kastelic,* 119 Wis. 2d at 291, 350 N.W.2d at 719. Here, however, we have directed enforcement of the parties' marital agreement which will result in a significant alteration of the parties' financial status. In such a case, it is better practice to have the trial court address the question of attorney's fees contribution anew.

We stress that our reversal and remand on this matter is not intended as any indication that the existing contribution order—or some greater or lesser amount—is appropriate following the proceedings on remand. We also stress that the remand proceedings on this issue should not be limited to merely augmenting the deficient record before us now. Rather, the entire question should be fully reexamined in light of the new property division which will occur.

No costs to either party.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.