COURT OF APPEALS
DECISION
DATED AND FILED

January 18, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1892**

STATE OF WISCONSIN

Cir. Ct. No.  2018FA124

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

MARY ANN RUDIE,

  JOINT-PETITIONER-APPELLANT,

  V.

KEVIN PAUL RUDIE,

  JOINT-PETITIONER-RESPONDENT.

APPEAL from a judgment of the circuit court for Marathon County: SUZANNE C. O'NEILL, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Mary Ann Rudie[1] appeals the debt allocation portion of a judgment dissolving her marriage to Kevin Rudie. Mary Ann argues that the circuit court erred by nullifying both a prenuptial and postnuptial agreement as unenforceable. Mary Ann also contends that the court erroneously exercised its discretion by deeming her responsible for all of the debt incurred during the marriage. We reject Mary Ann's arguments and affirm the judgment.

## BACKGROUND

¶2    In early 2014, Mary Ann was granted a judgement of divorce from her previous husband and, in May of the same year, Mary Ann purchased a home in Marshfield with $240,000 in cash that she had been awarded from the divorce settlement. Kevin moved into the home, and that fall, Mary Ann and Kevin discussed marriage, but Mary Ann was reluctant to marry so soon after having been divorced. Using a form from a legal forms website, Mary Ann drafted a prenuptial agreement in an attempt to secure her individual interest in the property she brought to the marriage. The prenuptial agreement provided, in part, that in the event of the parties' separation/divorce: (1) the property belonged to Mary Ann, and Kevin would not make any claim on the property; (2) Kevin would pay half of all bills, including property taxes on the property, until its sale; and (3) "all monies from the sale [of the property would] belong to Mary Ann."

¶3    The couple married on February 14, 2015. In November 2015, Kevin sustained serious injuries in a car accident. He did not have health

---

[1] The individuals involved in this appeal share the last name "Rudie." To avoid confusion, after the first reference to each individual, we will refer to that individual by his or her first name.

insurance at the time of the accident and, as a result, he accumulated significant medical debt. Mary Ann mortgaged the Marshfield home, took out a home equity loan, and used her credit card to pay off the medical debt.

¶4 The parties jointly petitioned for divorce in March 2018. In July 2018, Mary Ann drafted a letter "to whom it may concern," outlining the medical debt incurred as a result of Kevin's accident and the actions she took to satisfy the medical debt. The letter provided, in part, that Kevin agreed to: (1) pay Mary Ann $750 per month, representing half of the mortgage; (2) maintain Mary Ann as his social security representative, thus allowing her to deduct the monthly payment from his social security check; (3) obtain a life insurance policy naming Mary Ann as the sole beneficiary; and (4) obtain full-time employment in the event that his social security benefits were terminated. The document was signed by both parties before a notary public, though Kevin claimed he only reviewed it for a "couple of minutes" prior to signing it.

¶5 Kevin subsequently moved for a declaratory judgment to nullify the "alleged prenuptial and postnuptial agreements." Following two evidentiary hearings, the circuit court nullified the agreements, concluding that they were inequitable and unenforceable. After a contested divorce hearing, the court granted the parties a judgment of divorce. With respect to property division, Kevin was awarded a car and bank accounts worth a combined total of approximately $1,900. The court awarded Mary Ann a bank account, a car, and the Marshfield home, with an estimated value of $222,800, resulting in combined assets totaling approximately $248,896. All of the marital debt, totaling almost $151,000—which included the home loan, car loan, and credit cards—was also assigned to Mary Ann. This appeal follows.

**DISCUSSION**

¶6    Mary Ann argues that the circuit court erred by nullifying the prenuptial and postnuptial agreements. Our supreme court has determined that a marital property agreement will be considered "equitable," and therefore enforceable, when all three of the following requirements are met: (1) each spouse has made a fair and reasonable disclosure of his or her financial status to the other spouse; (2) each spouse has entered into the agreement voluntarily and freely; and (3) the substantive provisions of the agreement dividing the property upon divorce are fair to each spouse.[2] *See **Button v. Button***, 131 Wis. 2d 84, 89, 388 N.W.2d 546 (1986).

¶7    The circuit court's determination of equitableness requires the court to exercise its discretion. *See **id.*** at 99. We will sustain a discretionary act of the circuit court if the court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. ***Loy v. Bunderson***, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982). Further, the circuit court's findings of fact will not be set aside unless clearly erroneous. WIS. STAT. § 805.17(2).

---

[2] Similarly, WIS. STAT. § 766.58(6) (2021-22), provides that a marital property agreement executed before or during marriage is not enforceable if the spouse against whom enforcement is sought proves any of the following: (1) the agreement was unconscionable when made; (2) that spouse did not execute the marital property agreement voluntarily; or (3) before execution of the agreement, that spouse did not receive fair and reasonable disclosure of the other spouse's property or financial obligations and did not have notice of the other spouse's property or financial obligations.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶8    Here, the circuit court concluded that neither agreement satisfied the ***Button*** requirements.    First, the court determined that the motion hearing testimony did not support a finding that the parties fairly and reasonably shared their individual financial status with one another before executing the documents. Although the court acknowledged that the parties had "some general knowledge of each other's income and assets," it found that this knowledge was limited, adding that "[t]here is no indication that the parties had actual knowledge of each other's financial status or … the net worth of each other's income, assets and liabilities."

¶9    With respect to the second requirement—i.e., that each spouse entered into the agreement freely and voluntarily—the circuit court recognized that when analyzing this requirement, some factors it should consider include "whether each party was represented by independent counsel, whether each party had adequate time to review the agreement, whether the parties understood the terms of the agreement and their effect, and whether the parties understood their financial rights in the absence of an agreement." ***Button***, 131 Wis. 2d at 95-96.

¶10    The circuit court recounted Kevin's testimony that he signed the documents without consulting an attorney, an accountant, or a financial planner and that he did not fully understand the terms of the agreements. The court also noted that Kevin testified he was reliant on Mary Ann for housing and support, and he signed the prenuptial agreement because he was afraid Mary Ann would not consent to marry him without his signature. With respect to the postnuptial agreement, Kevin stated his belief that Mary Ann would not allow him to continue to reside in the Marshfield home if he did not sign the agreement. Based on the record, the court found that Kevin did not enter into either agreement voluntarily or freely.

¶11     Turning to the third requirement—that the substantive provisions of the property agreement are fair to each spouse—the circuit court found that neither agreement was substantively fair. The court concluded that it was inequitable for the agreement to require Kevin to pay half of all bills associated with the house indefinitely, but then be entitled to no proceeds upon the sale of the property. The court further noted that while the agreement allowed Kevin to live at the home following the parties' separation, it was "not realistic that the two parties would want to continue to cohabitate following a divorce." The court determined that the postnuptial agreement expanded upon the inequities of the prenuptial agreement, as it required Kevin to pay $750 per month toward the mortgage, which could be deducted by Mary Ann as Kevin's social security representative. The court concluded that "the inherent imbalance of financial power given to [Mary Ann] as [Kevin]'s representative payee … further renders the agreement inequitable."

¶12     On appeal, Mary Ann takes issue with the circuit court's determinations on each of the three *Button* requirements. She claims that the agreements adequately identified the parties' assets and that she and Kevin nevertheless knew about each other's respective finances. Mary Ann further claims that the parties entered the agreements voluntarily and that there was no evidence that Kevin was forced to sign either agreement. Finally, Mary Ann claims the agreements were equitable to both parties, given the significant asset Mary Ann brought to the marriage and the relatively short duration of the marriage. Despite her arguments, Mary Ann fails to show that any of the court's findings were clearly erroneous or that its application of the facts to the standard set forth in *Button* constituted an erroneous exercise of discretion.

¶13     Mary Ann also argues that the circuit court erred by making her responsible for all of the marital debt. The division of the marital estate upon

divorce is within the sound discretion of the circuit court. *Schumacher v. Schumacher*, 131 Wis. 2d 332, 337, 388 N.W.2d 912 (1986). Property division is governed by WIS. STAT. § 767.61, which establishes a presumption in favor of equal division of marital property. A court may deviate from the presumption of equal property division, but only after considering a lengthy and detailed list of statutory factors. *Jasper v. Jasper*, 107 Wis. 2d 59, 68, 318 N.W.2d 792 (1982). The statutory list contains twelve enumerated factors, plus a catch-all provision. Although the court is directed to consider all of the factors before altering the presumption of equal property division,[3] there is nothing precluding the court from

---

[3] WISCONSIN STAT. § 767.61(3) provides:

> The court shall presume that all property not described in sub. (2)(a) [gifts and inheritances] is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering all of the following:
>
> (a) The length of the marriage.
>
> (b) The property brought to the marriage by each party.
>
> (c) Whether one of the parties has substantial assets not subject to division by the court.
>
> (d) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
>
> (e) The age and physical and emotional health of the parties.
>
> (f) The contribution by one party to the education, training or increased earning power of the other.
>
> (g) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

(continued)

giving one statutory factor greater weight than another or from concluding that some factors may not be applicable at all. *LeMere v. LeMere*, 2003 WI 67, ¶25, 262 Wis. 2d 426, 663 N.W.2d 789.

¶14 In making its decision, the circuit court considered the applicable statutory factors. It took into account the short duration of the marriage and the significant asset—namely, the house—that Mary Ann brought to the marriage. The court also considered the parties' ages and health, acknowledging that both parties had limited income and lacked any significant future earning capacity. The court also recognized that Kevin's car accident resulted in significant medical debt being incurred during the marriage. Although Kevin contributed to the mortgage and general upkeep of the home, the court denied Kevin's request for half of the

(h) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having physical placement for the greater period of time.

(i) The amount and duration of an order under [§] 767.56 granting maintenance payments to either party, any order for periodic family support payments under [§] 767.531 and whether the property division is in lieu of such payments.

(j) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

(k) The tax consequences to each party.

(L) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

(m) Such other factors as the court may in each individual case determine to be relevant.

proceeds from the sale of the home. The court noted: "For [Kevin] to leave this marriage with significantly more than he had coming in and to leave [Mary Ann] with incredibly less than what she had coming into a three-year marriage would be a windfall [to Kevin]." The court awarded Mary Ann sole possession of the home, but it made her responsible for the marital debt.

¶15    Given the short duration of the marriage and Kevin's nominal contributions to it financially, coupled with the significant nondischargeable medical debt he incurred, Mary Ann claims the circuit court should have offset the property division in her favor and held Kevin responsible for one-half of the marital debt.

¶16    Ultimately, Mary Ann received property with a net value of approximately $97,900, and Kevin received property with a net value of approximately $1,900. While Mary Ann deems the decision unfair, that assertion does not establish an erroneous exercise of the circuit court's discretion.

        *By the Court*.—Judgment affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.